IN RE ESTATE OF LILY GIVENS, deceased.

No. 50806.

(Reported in 119 N.W.2d 191)

JANUARY 15, 1963.

REHEARING DENIED MARCH 12, 1963.

Smith & Hanson, of Emmetsburg, for plaintiffs-petitioners, proponents-appellants.

Linnan, Lynch & Straub, of Algona, for defendants-contestants-appellees.

THOMPSON, J.—Lily Givens died a resident of West Bend, in Palo Alto County, on April 7, 1959. She was the widow of Dr. H. Frank Givens, who had practiced medicine in West Bend and vicinity since 1918. He died in April of 1958. The couple had no children. Doctor Givens left a last will which was duly probated. It bequeathed and devised his entire estate, with the exception of two specific bequests of $5000 each, to his spouse, Lily Givens. The estate was substantial, amounting to approximately $250,000.

When Lily Givens died a thorough search disclosed no existing will, although she had without doubt executed one in 1954. Her estate was opened as intestate, and B. K. Peterson, a banker and long-time financial adviser to both Doctor and Mrs. Givens,

was appointed as administrator. He was also executor of the estate of Doctor Givens. This action to establish and probate a lost will was commenced shortly after. Upon the trial a considerable volume of evidence was taken. The trial court found that the previous existence of a will of Lily Givens, executed in 1954, and its contents, had been established. But it also held that because the will could not be found, although a careful search was made in all places where there was any likelihood it might be located, the presumption of revocation had not been overcome. Judgment was entered for the contestants, and the proponents bring this appeal. The 1954 will of Lily Givens, the execution and contents of which the court found had been established, devised and bequeathed her entire estate to her husband, H. Frank Givens. The proponents here are heirs of H. Frank Givens, who would be entitled to claim under section 633.16 of the Code, the "antilapse" statute, if the will of Lily Givens were established. The contestants are the heirs of Lily Givens, who take if she died intestate. Further facts will be stated as they become material in discussing the various issues presented.

██ ██   I. We are faced first with procedural questions. The proponents demanded a jury trial, which the trial court denied. Error is assigned on this ruling. It is urged that the present proceeding is in fact a will contest and so a jury trial, if requested, is mandatory. The short answer is that we have held to the contrary in several cases which cannot fairly be distinguished, notwithstanding the efforts of able counsel so to do. It seems to be their theory that, since the trial court found there had been a will executed, and what its contents were, the matter then became a simple will contest. This would divide the trial into two parts: one, concerned with the execution of the will and its contents, triable to the court; the second, a will contest triable to a jury. This is not what we have held. A proceeding to establish a lost will requires proof of these items: 1, due execution and former existence of the alleged will; 2, that it has been lost and could not be found after diligent search; 3, that the presumption of destruction by decedent with intent to revoke it, arising from its absence at death, has been rebutted by the required quantum of proof; and 4, the contents of the

will. In re Estate of Lawrence, 251 Iowa 305, 309, 100 N.W.2d 645, 649, and citations. It is only after each of these things has been proven that the will may be admitted to probate, and its admission challenged in an ordinary will contest.

In the case at bar the third requirement, in the judgment of the trial court, was not proven. So the point when a jury trial of a will contest is the proper procedure was not reached. Until it was, under our authorities the case was triable in probate to the court without a jury. In re Estate of Lawrence, supra, 251 Iowa 305, 308, 100 N.W.2d 645, 648; Goodale v. Murray, 227 Iowa 843, 856, 289 N.W. 450, 456, 126 A. L. R. 1121; Coulter v. Petersen, 218 Iowa 512, 514, 255 N.W. 684, 686. All four elements necessary to establish a lost will must be proven before we reach the point where the matter becomes an ordinary will contest.

II. The matter having been properly triable to the court in probate without a jury, its findings of fact, if supported by any substantial evidence, are binding on us. They have the effect of a jury verdict. Of course, this is true only if in reaching them the court applied proper rules of law.

III. The plaintiffs-proponents first five assigned errors are related and will be treated in this division. It is asserted that the court was in error in holding the plaintiffs had the burden of proof on the issue of revocation; in holding that a presumption of revocation existed under the record in the case; in holding the plaintiffs had the duty to show what actually happened to the will of Lily Givens; in finding that the presumption of revocation was not rebutted, if such presumption existed; and in applying the standard of clear, convincing and satisfactory evidence to the issue of revocation, if the duty of overcoming the presumption of revocation was upon the plaintiffs.

It is plaintiffs' contention that, since they proved the existence of the will and its contents, the burden of showing revocation should have been placed upon the defendants-contestants. They cite numerous authorities to the effect that one who claims revocation of a will has the burden to so show. This is the general rule; but it does not apply to an attempt to prove a lost will. To hold as the plaintiffs ask us to do would eliminate

the third requirement of proof of a lost will set out above. This requirement is equally important with the other three, and the lost will is not proven, although its former existence and contents are shown, until the presumption of revocation is overcome. To argue otherwise begs the question.

However, the plaintiffs assert that the presumption of revocation does not come into effect unless it is shown that the will was in the possession of the testator. So, in the case at bar, they point out that the 1954 wills of both Doctor and Mrs. Givens had been left with one Edwin Dorweiler, a family friend residing in West Bend. Mr. Dorweiler testified that on December 31, 1957, he took both wills to Doctor Givens. "Doctor Givens was alone when I gave the wills to him. He was sitting in a chair in his living room. * * * He laid the wills on the table. I had the two white envelopes * * * and they was both inside of a brown envelope, and he laid that brown envelope down on his table there. * * * I never saw those wills again."

It is the thought of plaintiffs that, since the wills were left in the possession of Doctor Givens, they were not in the possession of Lily Givens and so the presumption of revocation does not apply. Again, they are following a general rule; but again there is an exception or qualification. The general rule is set out in 57 Am. Jur., Wills, section 973, page 636, as contended for by the plaintiffs. But in the 1962 pocket parts, page 56, under section 973, page 636, we find this: "Add, following 'destroyed will' in the fifth line in the section: Thus, the burden of proof of nonrevocation is on the proponent of a lost will shown to have been duly executed and in the possession of, or readily accessible to, the testator or which was not shown to have been in the possession of another at the time of its loss, in order to overcome the rebuttable presumption of revocation which prevails in such instances." Many authorities are cited in support of this exception. Among them we find Davis v. Davis, 298 Ky. 310, 182 S.W.2d 885, a case so nearly identical on the facts to the one before us that it is worthy of special note. We quote: "We have noted that Mrs. Davis said she maintained custody of the will, but, according to her own testimony, it was kept in the Davis home in an unlocked box, so we fail to see how it could be said

to be in her possession anymore than that of Mr. Davis." Loc. cit. 298 Ky. 312, 182 S.W.2d 886.

Our own case of Page v. Parks, 232 Iowa 879, 883, 884, 6 N.W.2d 298, 300, recognizes and applies the same exception. We there quoted with approval from 28 R. C. L. 385: " 'It has been said, however, that the evidence to overcome the presumption that a lost will was destroyed by the testator animo revocandi must be clear, satisfactory, and convincing. * * * But the presumption is entirely overcome and rebutted when it appears that upon the execution of the will it was deposited by the testator with a custodian, and that the testator did not hereafter have it in his possession *or have access to it.*' " See generally on this point 3 A. L. R.2d, annotation, Lost Wills, page 956. The evidence in the case before us placed the will in the home of Doctor and Lily Givens, where both resided. Lily Givens outlived her husband by approximately a year. We cannot say that as a matter of law the will was not accessible to her at any or all times after it was left lying on the table in their home. Its accessibility was such, in fact, that the case comes clearly within the exception to the rule contended for by the plaintiffs. In fact, there seems no reason why Doctor Givens would have wished to destroy his wife's will, since the result would have been to disinherit his own next of kin in favor of the closest relatives of his wife. The so-called presumption of revocation seems, in truth, to be really an inference of fact drawn from the inability to locate a will which was last known to have been in the possession of the testator or to which he had ready access; and generally it is a fact question as to whether the presumption, or inference, has been overcome. The presumption is not conclusive, and may be rebutted; it is not a burden impossible to carry.

However, it must be carried by evidence stronger than a mere preponderance. We quote from Iowa Wesleyan College v. Jackson, 249 Iowa 91, 95, 86 N.W.2d 126, 129:

"Plaintiffs' burden is even more difficult than in the ordinary case. They confront a *presumption of law* which requires much more than a preponderance of evidence to overcome.

"* * * And the burden of one seeking to establish the will and overcome the presumption is to produce clear, satisfactory

and convincing evidence to the contrary." Several authorities are cited.

See also In re Estate of Lawrence, supra, loc. cit. 251 Iowa 309, 100 N.W.2d 649. The trial court properly applied this standard to the evidence before it, in accord with the established law in Iowa.

Plaintiffs further contend that the trial court failed to give proper weight to what they think the evidence shows regarding opportunity, or opportunities, of one of the contestants to destroy the will. Mrs. Lorraine Roadcap Rucker, a niece of Mrs. Givens and one of the defendants, had visited her aunt on several occasions, and at least once had burned some papers in an incinerator at the home. She stayed in the home the night after Mrs. Givens' funeral. From this the plaintiffs argue she had the opportunity on several occasions to destroy the will, which it would have been in her interest to do. Mrs. Rucker as a witness denied ever seeing the will or knowing of its existence, or having destroyed it. She explained the burning of the papers by testifying they were some rubbish or trash which she destroyed at Mrs. Givens' request.

It is difficult to say whether the plaintiffs are at this point contending that the evidence of Mrs. Rucker's opportunity was sufficient to require a finding of destruction by her, or are merely asserting it was a strong circumstance to which the court did not give sufficient weight. If the first, we do not agree, nor do the authorities cited by the plaintiffs support such a position. If the second, the trial court was of course the judge of the facts. At best, there was evidence which might support a suspicion against Mrs. Rucker, although we think it a faint one. Against this there was her positive evidence that she did not destroy the will. The trial court appropriately pointed out that the plaintiffs seem to contradict themselves on this point and in their contention that Mrs. Givens did not have possession of or access to her will. The will was left in Mrs. Givens' home, where she lived, yet they deny she had any access to it. On the other hand they urge that Mrs. Rucker, who was there only on a few short visits, had sufficient access to procure the will and destroy it. The positions are inconsistent. We think the fact in both cases was

for the trial court, and its decisions on each point are supported by ample evidence. The same is true as to the claimed opportunities of the defendants Gans and Peed.

Again, the plaintiffs attempted to show that during her later years, the time material here, Mrs. Givens was not of sound mind and so lacked mental capacity to revoke her will. There was considerable evidence on the point, some tending to show a mental weakness, and other substantial testimony to the contrary. The fact was for the trial court to decide.

IV. It is strongly urged by plaintiffs that if there is a presumption of revocation of the will arising from inability to locate it, the presumption is destroyed when rebutting evidence is produced. Again we are left in doubt as to plaintiffs' exact position. We do not know whether they are contending that any rebutting evidence is sufficient to destroy the presumption, or whether they assert they have met the rule of "clear, convincing and satisfactory". It is evident that the statement that the presumption must be overcome by the quantum of evidence last set forth, which is the established rule in Iowa, must mean that someone, the trier of facts, must weigh the evidence to determine whether the requirement has been met; and this in itself demonstrates that the presumption is not one which can be eliminated merely by countervailing proof.

It is the established rule in Iowa that when there is evidentiary basis for a presumption, it has the effect of evidence. In Beggs v. Metropolitan Life Ins. Co., 219 Iowa 24, 26, 27, 257 N.W. 445, 446, 95 A. L. R. 863, we said: "The evidentiary facts are the ones from which the presumptions arise. When once established by the evidence, such facts remain in the record, and no matter what other facts the record may reveal, tend to sustain a finding of the fact presumed."

In In re Estate of Lundvall, 242 Iowa 430, 436, 46 N.W.2d 535, 538, we quoted with approval from Beggs v. Metropolitan Life Ins. Co., supra, loc. cit. 242 Iowa 436, 46 N.W.2d 538: "The cases are clear upon the proposition that the nonexistence of the presumed fact must be conclusively established before presumption can be eliminated." The question has been well stated by Dean Mason Ladd in his Workshop Outlines submitted at the

86th Annual Meeting of the Iowa State Bar Association in June 1959, when he says that if a presumption is based on a "logical core", even though the presumption were eliminated, the inference created by the logical core would remain. So he reasons: "This simply means that if, in the absence of rebutting proof, the jury [or the court] would be compelled to find a certain presumed fact, they may still find that fact after rebutting testimony if they regard the logical deduction therefrom more probable than the testimony against it."

Applying these principles to the case at bar, it is evident the presumption of revocation of a will which has been lost and cannot be produced is based on inferences of fact: that is, that the will having been in the possession of the asserted testator, or readily available to him, and not being found at his death, it is a logical deduction that he destroyed it animo revocandi. So, even though opposing evidence is produced, the presumption remains and the weight of the evidence is for the trier of facts, in this case the trial court, to determine. The presumption is of course rebuttable, but the fact issue remains.

V. The presumption of destruction with intent to revoke may be strengthened or weakened by proof of declarations of the testator. 57 Am. Jur., Wills, section 564, page 387; Goodale v. Murray, supra, loc. cit. 227 Iowa 862, 863, 289 N.W. 459, 460, and citations. While generally the presumption itself is sufficient to generate a jury question, it may in exceptional cases be overcome. It is not prohibitive. Iowa Wesleyan College v. Jackson, supra, loc. cit. 249 Iowa 96, 86 N.W.2d 129. In any event, it is supported in the case at bar by evidence of declarations of Lily Givens. These are found in the testimony of Carl L. Spies, an attorney who represented the Doctor Givens estate. He testified that on two or three occasions he suggested to Mrs. Givens that she should have a will, or was called to her home for the purpose of drafting one for her. On each occasion, however, Mrs. Givens said she was not ready to make a will. She said she knew she should have one, but had not made up her mind what she wanted to do. There was talk about charitable contributions, but Mrs. Givens said she had not fully decided the disposition she wished to make. Mr. Spies talked to her three

or four times between the times of the doctor's death and her own. On each occasion there was talk of preparation of a will for her. This tends to show she knew she did not have a will in existence, and supports the presumption of destruction and revocation of any previous wills. While, even in the absence of any corroborating evidence, we think under the record here the presumption itself would create a jury question on the issue of revocation, there is plainly some additional showing to support the trial court's finding of fact on this point.

Plaintiffs urge that declarations of intent to make a new will are not competent to show revocation of an existing will. They cite in support of this contention In re Estate of Lawrence, supra, 251 Iowa 305, 100 N.W.2d 645, and In re Will of Dunahugh, 130 Iowa 692, 107 N.W. 925. We do not find these cases in point. In the Lawrence case we were considering sufficiency of the evidence to show due execution and former existence of an alleged will, and its contents. We said: "We have held evidence of declarations of the testator admissible on the issue of due execution of the will." Loc. cit. 251 Iowa 310, 100 N.W.2d 649. We also quoted with approval from 62 A. L. R.2d 855, 876: "It seems, however, that while such declarations cannot of themselves take the place of the required proof of due execution, they may be admissible in corroboration of other evidence for or against the due execution of the will." Loc. cit. 251 Iowa 311, 100 N.W.2d 650.

In re Will of Dunahugh holds only that the one who seeks to prove a lost will must produce evidence not only of due execution but also of the contents of a will, and that such a will cannot be proved merely by declarations of the alleged testator that he had made a will.

But the testimony of Mr. Spies falls within the general rule set out above that the presumption of revocation may be strengthened by declarations of the testator which tend to show such revocation.

VI. There is another consideration which supports the finding that the lost will was destroyed with intent to revoke. It was logical that Lily Givens would leave her entire estate to her husband as she did in the will of 1954. But the reason for this

would disappear when H. Frank Givens predeceased her. The probable result of leaving the will in effect then would be to disinherit her own heirs in favor of those of her husband. It is possible she might have preferred this result, but more probable that she would not. It is natural that she would not prefer her husband's relatives over her own to the entire exclusion of the latter. We pointed this out in Page v. Parks, supra, where we quoted with approval the reasoning of the trial court on the same question. Loc. cit. Page v. Parks, 232 Iowa 882, 6 N.W.2d 300. Here also we find support for the fact finding of the trial court that the will was destroyed animo revocandi.

VII. Plaintiffs' sixth assignment of error is quoted: "The Trial Court erred as follows: * * * 6. In its rulings on admissibility of evidence and the effect of the overall record and the great number of such errors caused prejudice to the proponents." Rule 344(a) says:

"Appellant's opening brief shall contain: * * *

(4) In separately numbered divisions:

"(First) A statement of the 'error' or 'proposition' relied on and discussed in that division, with references to the pages and lines of the record, sufficient to show fully the manner in which the error arose and the ruling of the trial court thereon."

A glance at the statement of the alleged error in the plaintiffs' brief makes it obvious that this assignment does not comply with the rule as set out above. It is an omnibus or "catchall" assignment. Under similar circumstances we have several times held that no question was presented for review. Leytem v. Fireman's Fund Indemnity Co., 249 Iowa 524, 529, 85 N.W.2d 921, 924; Miller v. Griffith, 246 Iowa 476, 482, 66 N.W.2d 505, 509; Slabaugh v. Eldon Miller, Inc., 244 Iowa 29, 39, 55 N.W.2d 528, 533; Young v. Marlas, 243 Iowa 367, 370, 51 N.W.2d 443, 445; Osbey v. Nelson, 248 Iowa 571, 572 to 574 inc., 81 N.W.2d 449, 450 to 452 inc. It is true that in some cases we have as a matter of grace overlooked failure to comply with rule 344(a) (4) (First), supra, where this could be done without injustice to either party and without weakening the authority of the rule. Osbey v. Nelson, supra, loc. cit. 248 Iowa 575, 81 N.W.2d 452.

We have accordingly in the case at bar given attention to the alleged errors argued which the plaintiffs apparently think are within their assignment No. 6. They concede that some of them appear trivial; some of them were removed by the trial court when it stated that it had eliminated the testimony of certain witnesses; and after a review of the remaining complaints at this point we content ourselves by saying we find no error in rulings on competency of witnesses or admissibility of evidence which the court considered in making its decision.

VIII. Assigned Error No. 7 is this: "That the Court erred * * * in passing on the credibility of certain of the contestants' witnesses and their testimony." As stated, the contention is certainly an unusual one. That the trier of the facts is the judge of the credibility of the witnesses is elementary. In re Estate of Lawrence, supra, loc. cit. 251 Iowa 308, 100 N.W.2d 648. The argument in support of the assigned error seems to be based on the claim that the court should have found some of the testimony, particularly that of the witness Peterson, so incredible and self-contradictory that it should have disregarded it. We have examined the record and are unable to agree. The court was well within its proper discretion in weighing the evidence and judging the credibility of the witnesses, and we find no testimony so inherently improbable or contradictory or contradicted that the court was required to discard it as a matter of law.

IX. The plaintiffs were faced with a difficult question of proof. In In re Estate of Lawrence, supra, loc. cit. 251 Iowa 308, 100 N.W.2d 648, we quoted with approval from 95 C. J. S., Wills, section 419, page 344: " 'Stringent requirements for proof of lost or destroyed wills are imposed to avoid fraud, and the court should proceed with extreme care in the matter of proving a lost will.' "

This is a concise statement of the real difficulty the plaintiffs faced in the instant case. The burden upon them was a heavy one in the trial court. Upon appeal their situation is still more onerous. Here they must overcome also the adverse findings of fact of the trial court. Much of their argument seems, when analyzed, to revolve around the contention that the court did not properly weigh the facts and evaluate the evidence, and that

it credited certain witnesses who should have been discredited. But with these matters we may not concern ourselves, once we have found, as we have, that the court applied proper rules of law and did not consider incompetent testimony or the testimony of incompetent witnesses.

We find no error.—Affirmed.

All JUSTICES concur except STUART, J., who takes no part.