IN RE ESTATE OF MARY HASSELSTROM, deceased.

CAROLINE GINTER, proponent-appellee, v. DOREEN WING et al., appellants.

No. 51433.

(Reported in 135 N.W.2d 530)

June 8, 1965.

Lund & Lund, of Webster City, for defendants-appellants.

Hemingway & Hemingway, of Webster City, for proponent-appellee.

THORNTON, J.—This is an action to establish a lost will. The trial court found for proponent and established the will as prayed. Only three of a large number of defendants appeared, they appeal urging the insufficiency of the evidence to meet the required burden of proof and the court was without jurisdiction.

Proponent, Caroline Ginter, is an 84-year-old widow. She is the sole surviving child of Swen and Sofia Marie Hasselstrom. Swen and Sofia Marie were the parents of ten children, five boys and five girls. Sofia Marie by a prior marriage had two sons, August and John Lundell. Swen died intestate in 1909, the owner of a quarter section in Hamilton County.

The conceded purpose of this action is to establish the lost will of Mary Hasselstrom, one of Swen's daughters, in order that it may be admitted in evidence in further proceedings to clear title to the quarter section. Mary died in 1940. This action was tried with actions to establish the existing wills of Dora who died in 1948, Elizabeth who died in 1945, and Delia who died in 1956, the three sisters of Mary and proponent. Their wills were admitted to probate, no appeal is taken in such cases. Their wills were admitted in evidence in this case.

■ I. Defendants' contention in regard to jurisdiction goes both to jurisdiction of the persons and subject matter. The defendants appeared generally and filed objections. This waived their objections to jurisdiction of their persons.

■ ■ The objection to jurisdiction of the subject matter is based on the contention the district court did not have jurisdiction in probate to hear and determine the issues presented. This contention is without merit. It cannot be denied the district court is a court of general original jurisdiction. It has three dockets, law, equity and probate. If a case is placed on the wrong docket it is not to be abated or dismissed, but transferred to the proper docket on motion at or before filing answer. Sections 611.7, 611.8 and 611.9, Code of Iowa, 1962, and such error

is waived by failure to so move. In re Estate of Long, 251 Iowa 1042, 1051, 102 N.W.2d 76, 81, and citations. That probate is the proper forum, see Coulter v. Petersen, 218 Iowa 512, 255 N.W. 684; and Goodale v. Murray, 227 Iowa 843, 856, 289 N.W. 450, 126 A. L. R. 1121.

Defendants also contend the order admitting the will to probate is void. They argue because section 633.47, Code of Iowa, 1962, provides administration shall not be originally granted after five years from the death of the decedent and the only exception thereto is the discovery of personal property after such period, section 633.48, Code of Iowa, 1962, the action cannot be maintained because the decedent here died in 1940. This is without merit. The proponent's petition did not ask that administration be granted on the estate, only that the will be established and duly probated. This was made clear in proponent's reply.

Establishing a will or probating a will amounts to the same thing. Hausen v. Dahlquist, 232 Iowa 100, 106, 5 N.W.2d 321, 141 A. L. R. 1304; and In re Marks' Will, 259 N. C. 326, 130 S.E.2d 673, 675.

There has been no limitation on establishing a will in this state unless section 331 of chapter 326 of the Laws of the Sixtieth General Assembly (new Probate Code effective January 1, 1964) is such a statute. Section 331 is not applicable here, it specifically exempts the will of a decedent who died prior to January 1, 1964, and this action was tried before the effective date of the statute.

II. Defendants point out, as proponent concedes, to establish a lost will proponent must prove by clear, convincing and satisfactory evidence (1) due execution and former existence of the alleged will (2) that it has been lost and could not be found after diligent search (3) that the presumption of destruction by decedent with intent to revoke it, arising from its absence at death, has been rebutted, and (4) contents of the will. The evidence need not be free from doubt. We have uniformly so held. In re Estate of Givens, 254 Iowa 1016, 1019, 119 N.W. 2d 191; In re Estate of Lawrence, 251 Iowa 305, 309, 100 N.W. 2d 645; Iowa Wesleyan College v. Jackson, 249 Iowa 91, 86

N.W.2d 126; and Goodale v. Murray, 227 Iowa 843, 289 N.W. 450, 126 A. L. R. 1121, and citations.

This action is triable in probate as one at law without a jury. It is not reviewable de novo but upon the errors assigned. The trial court's decision on the facts has the force and effect of a jury verdict. The credibility of witnesses and weight of the evidence are for the trial court. If supported by any substantial evidence the trial court's findings of fact are binding on us. In re Estate of Givens, 254 Iowa 1016, 1020, 119 N.W.2d 191; and In re Estate of Lawrence, 251 Iowa 305, 309, 100 N.W.2d 645.

Defendants moved for a directed verdict. Their contention then and now is the evidence is not clear, convincing and satisfactory. They also urge much of the evidence is not admissible. Defendants do not separately urge the inadmissibility of evidence. The trial court reserved ruling on evidence during the trial.

Proponent testified as to her sister Delia having the wills of their three sisters, Dora, Elizabeth and Mary, and bringing them to the farm where proponent was. Proponent testified she read each of the wills, she compared Elizabeth's and Mary's, "they were just exactly the same only the names were different." And she testified: "* * *, she [Mary] said that we, at first was to pay her last illness and the administration of her property and her burial, and then the next, the second one was to where she was going to give to her sisters, four sisters, her property and her real estate. If any of them had died, why then it should be divided afterwards among only the ones that were living at the time of her death. There was Dora, Elizabeth, Delia and Caroline Ginter. That was her sisters. And she appointed Delia as her administratrix. This was in May, I think 25, 1928."

She testified further, "Ed Peterson signed it, and Hannah Nelson. * * * At the bottom of it. That was the last, I guess, at the bottom." Over objection that it was an opinion and conclusion, she testified, "I don't know what you mean. They were witnesses. That is what they were, witnesses to the will, Ed Peterson and Hannah Nelson."

Following the foregoing, in 1951 proponent and Delia went to Mr. F. L. Mackey's law office in Boone with Mary's will and

some shares of stock in Mary's name they wished to sell. Proponent wanted her share of the proceeds of the stock. She testified that she gave Mr. Mackey Mary's will, her sister handed him the stock. Mr. Mackey's office was then situated on the seventh floor of the Citizens National Bank building in Boone. He was in the process of moving his office. He was closing his law practice to become a trust officer for the bank. Proponent described his office, "* * * he had papers all over the table, he had papers on the floor * * * he throwed that will on the table, * * *."

To substantiate her claim Mr. Mackey lost the will, proponent testified to a conversation with her sister showing her (proponent's) state of mind relative to Mr. Mackey "throwing" the will on the table. She testified that after her sister and she got off of the elevator and while still in the building they had a conversation. She said, "Well, I have got a notion to go back and get that will." Her sister told her she could not do that, he needed it to clear the stock.

The exact number of trips made to see Mr. Mackey is not clear. Other trips were made to his desk on the ground floor of the bank building while he was a bank officer to conclude the sale of the stock. Mr. Mackey did file a probate inventory signed by Delia and proponent wherein only the sisters were listed as heirs or beneficiaries, decedent was shown as dying intestate, and the only property listed was the shares of stock. No administrator was appointed nor was such appointment prayed. From proponent's testimony it is a fair inference she asked Mr. Mackey for the return of the will but received no satisfactory answer.

On cross-examination she testified to a family plan whereby her sister Elizabeth purchased their mother's interest in the farm and that of her brothers, and the girls were to will the farm to the last survivor. Deeds of four of the brothers are in evidence. It is a fair inference from her testimony the girls for years had handled the farm as owners. Marie Schwandt, a former secretary of Mr. J. E. Burnstedt, a lawyer now deceased, testified to a letter, Exhibit "D", dated May 21, 1928, dictated by Mr. Burnstedt and typed by her. She signed it for Mr. Burnstedt and so initialed it. The letter is directed to Delia Hasselstrom, and is as follows:

"I herewith enclose wills for yourself and your sisters Mary and Elizabeth which I believe meet the requirement and the disposition that you wish to make. If not, let me know and I will redraft them.

"I had drawn a will for your sister Dora, but she made no restrictions at that time as to the property going to the heirs of a deceased sister in the event that any of her sisters died before she, and if she wants to put in this restriction so that her property shall go only to those of her sisters who survive her, we shall be glad to redraft the will for her.

"Each one of these wills should be witnessed by two disinterested parties."

Hannah Nelson, a former bank employee, testified Mr. Peterson, also a former bank employee, now deceased, and she witnessed a will executed by Mary, in her presence and in the presence of each other in May 1928. There are a number of infirmities and contradictions in her testimony as to whether Mr. Peterson prepared the will or Mr. Burnstedt did. Coupled with proponent's testimony to seeing the names of Hannah Nelson and Mr. Edward Peterson at the bottom of the will as witnesses, this testimony, if believed, is sufficient to prove the due execution and prior existence of the will. In re Estate of Klein, 241 Iowa 1103, 1108, 1110, 42 N.W.2d 593.

Mr. Mackey testified by deposition. It is a fair inference from his testimony that he has no present recollection of receiving Mary's will from proponent and has made a diligent search in all reasonable places and is unable to find the will, and it is lost. It would also be a fair inference he did not receive the will. This, of course, is for the trial court. A copy of Mary's will was not found in Mr. Burnstedt's files.

Credibility is given proponent's testimony in regard to the condition of Mr. Mackey's moving and condition of his office. His deposition shows his moving, and these are facts she could not otherwise know. That she may have been mistaken on dates does not weaken her testimony when the entire transaction is considered.

The probate inventory is inconsistent with the proponent's claim now. However, from her testimony, it is a proper infer-

ence she did not understand the import of all that was contained in it. She testified she did not know the meaning of "intestate." To some degree the listing of the names of the sisters only supports proponent's position. Such is either wholly inaccurate or is based on information obtained from the will.

Defendants' chief complaint about the sufficiency of the evidence is, it is so thin and contradictory as well as being based to a large degree on the testimony of proponent that it is not clear, convincing and satisfactory. Whether evidence meets that test, except in rare cases, is for the determination of the trier of facts; it involves credibility, weight and preponderance of the evidence. See In re Estate of Givens, 254 Iowa 1016, 119 N.W.2d 191; and In re Estate of Lawrence, 251 Iowa 305, 100 N.W.2d 645.

In this case, based on cross-examination of proponent, the deeds in evidence, the other wills in evidence, and the letter, Exhibit "D", the court could properly infer a plan on the part of the five sisters to will their interest in the farm and other residual property owned by them to the survivor.

That the plan was carried out appears from the letter, Exhibit "D", a preliminary step, proponent's testimony concerning Mary's will, and the testimony of Hannah Nelson. Thus due execution and prior existence of the will are shown.

Proponent's and Mr. Mackey's testimony shows the will is lost and could not be found after diligent search. The court here could properly find there was no presumption of destruction by decedent with intent to revoke the will because it was in existence in Delia's possession and read by proponent long after decedent's death.

The contents of the will appear from the plan, the letter, Exhibit "D", and proponent's testimony.

Support for proponent's position is also found in that heirs of her brothers have apparently made no claim to the quarter section since Mary's death in 1940.

Defendants were not entitled to a directed verdict, to prevail they would have to be. In re Estate of Lawrence, 251 Iowa 305, 100 N.W.2d 645.

III.   Defendants complain much of proponent's

testimony was self-serving. This is inaccurate, what a witness testifies to directly on the witness stand is not objectionable because it is self-serving. It is only self-serving in the sense it is helpful to the witness's cause. Self-serving statements that are objectionable are extrajudicial statements of a party. Such statements are hearsay but when they come within an exception to the hearsay rule they are admissible. McCormick, Evidence Handbook, chapter 30, section 275, page 588. In 31A C. J. S., Evidence, section 216, page 590, a self-serving declaration is defined as follows:

"A 'self-serving declaration' within the rule is one made by a party in his own interest at some place and time out of court, and it does not include testimony which he gives as a witness at the trial."

Defendants cite Mutual Benefit Life Ins. Co. v. Steckel, 280 N.W. 523 (Iowa, 1938). At page 524 thereof it is clear a pleaded letter, an extrajudicial statement, was under consideration.

The only self-serving statement of proponent was to what she said to her sister on leaving Mr. Mackey's office. This was admissible as part of the res gestae, of the transaction and occurrences there. Likewise the letter of Mr. Burnstedt, Exhibit "D", was admissible as such. In re Estate of Willesen, 251 Iowa 1363, 1372–1374, 105 N.W.2d 640, 646, 647.

It follows the case must be and is—Affirmed.

All JUSTICES concur.