In the Matter of the ESTATE OF J.R. FIKSDAL, a/k/a Johan Richmond Fiksdal, Deceased.

No. 15062.

Supreme Court of South Dakota.

Considered on Briefs March 17, 1986.

Decided May 21, 1986.

Leon J. Vander Linden, Webster, for appellant Security Bank.

Duane C. Anderson, Christopherson, Bailin & Anderson, Sioux Falls, for appellee Borghild Fiksdal; John C. Peters, Hartford, Conn., on brief.

SABERS, Justice.

Decedent's children and his executor appeal from the trial court's judgment that decedent made an inter vivos gift of his coin collection to his wife. We reverse.

### Statement of Facts

Johan Richmond Fiksdal (Fiksdal), owned a furniture store and funeral parlor in Webster, South Dakota. He was an avid hunter and collector, and had among his possessions valuable coin, stamp, gun, and Indian artifact collections.

In the fall of 1975 and prior to their marriage, Fiksdal discussed his coin collection with Borghild Peters (Borghild). According to her testimony, he stated, "If you marry me, all of this will be yours," in

reference to several pieces of silver and the coin collection.

On April 19, 1976, Fiksdal and Borghild were married. Earlier that same day they entered into a Prenuptial Agreement. The agreement stated that whatever property the parties brought into their marriage would remain their separate property. The agreement also contained a provision which reserved the right of each spouse to make gifts to each other. This provision states in part:

4. *Transfers between the Parties.*

Notwithstanding the provisions of this Agreement, each Party shall have the right to transfer or convey to the other any property or interest therein which may be lawfully conveyed or transferred during his or her lifetime or by will or otherwise upon death, and neither Party intends by this Agreement to limit or restrict in any way the right and power to receive any such transfer or convey-ance from the other.

Fiksdal executed his Last Will and Testa-ment on June 17, 1971. Included therein was the bequest of his coin collection, as well as his other collections, to the four children of his first marriage. On the day of his marriage to Borghild, Fiksdal exe-cuted a codicil to his will which reaffirmed it in *all* respects.

Within a month after the marriage, Fiksdal moved into Borghild's house. He brought the various collections with him. The coin collection remained there until his death. The coin collection was valued at between one quarter to one-third of a mil-lion dollars.

Fiksdal died on December 8, 1984. He left Borghild approximately $160,000 in the form of bonds, C.D.s, and a joint checking account. The Security Bank and Trust Company of Webster, was appointed Exec-utor of Fiksdal's estate on January 9, 1985. In an effort to assemble the total assets of the Fiksdal estate, the executor requested Borghild to turn over the above referenced collections which were in her possession. She refused.

Thereafter, the executor and the Fiksdal children obtained an order which required Borghild to show cause why the collections should not be inventoried with the other assets of the estate. She responded that the coin collection was given to her by the decedent prior to his death, and was thus, not a part of the Fiksdal estate. Borghild stipulated, however, that she was only making a claim to the coin collection and not for the stamp collection, gun collection, or the Indian artifacts.

A hearing was held on May 8, 1985. The trial court entered Findings of Fact, Con-clusions of Law, and a Judgment on June 5, 1985, which awarded the coin collection to Borghild and held that the Fiksdal estate had no claim to it.

### Issue

DID THE WIFE PROVE EVERY ELE-MENT OF THE GIFT OF THE COIN COLLECTION BY CLEAR AND CON-VINCING EVIDENCE?

■ The trial court did not specifically enunciate the standard of proof it used to decide this case. There is a rebuttable presumption that the trial court applied the appropriate standard of proof. *See:* 5 Am. Jur.2d, *Appeal and Error* § 704, at 149 (1962).

In *Medin v. Brookfield*, 66 S.D. 209, 281 N.W. 97 (1938), the mortgagors claimed that a satisfaction executed by the mort-gagee, (who was deceased at the time of trial), was intended as a gift to them. The executor for the mortgagee's estate argued that the satisfaction was never intended as a gift, but intended to assist the defendants in procuring Home Owner Loan Corpora-tion Bonds which the mortgagee had con-sented to accept in satisfaction of the note and mortgage. However, the bonds were never given in discharge of the debt. The trial court held for the mortgagee's estate.

The note and mortgage were neither can-celled nor surrendered, but retained by the mortgagee during his lifetime. Moreover, during the interval of the several months between the time of the alleged gift of the mortgage debt to the defendants, and the

death of the donor [mortgagee], the defendants made no claim of a gift. *Id.* 66 S.D. at 213, 281 N.W. at 99. To that end, the *Medin* court stated:

It is a general rule that when a claim of a gift is not asserted until after the death of the alleged donor, the evidence must be clear and convincing of every element requisite to constitute a gift.

*Id.* The *Medin* court further found that the defendant's claim of a gift was inconsistent with the course of conduct on the part of the parties concerned. *Id.* 66 S.D. at 214, 281 N.W. at 99.

The trial court found that Fiksdal made a valid inter vivos gift of his coin collection to Borghild. The scope of this court's review is limited to whether the trial court's findings are clearly erroneous. *Vaughn v. Eggleston,* 334 N.W.2d 870 (S.D.1983).

■ In *Owen v. Owen,* 351 N.W.2d 139 (S.D.1984), we set forth the essential elements of a gift as: intent, delivery, and acceptance. *Id.* at 142; *Bunt v. Fairbanks,* 81 S.D. 255, 258, 134 N.W.2d 1, 2 (1965). The donor's intent must be shown in order to determine that a gift has been made. *Id.* Thus, "[a] gift is a transfer of personal property, made voluntarily, and without consideration." SDCL 43–36–1.

■ The trial court found that Fiksdal fulfilled the "delivery" element when he moved into Borghild's house after their marriage and brought the coin collection with him. However, the evidence shows that at the same time Fiksdal also moved his stamp, gun, and Indian artifact collections into Borghild's house. Borghild stipulated that she made no claim to the guns, stamps, and Indian artifacts. It appears, therefore, that Fiksdal's act of moving the coin collection into Borghild's house is, in and of itself, inconclusive to satisfy the "delivery" requirement.

In *Bunt, supra,* the husband, without his wife's knowledge, withdrew funds from their joint checking account and purchased stock with it. He had the stock issued in joint tenancy between himself and his daughter, and he also retained possession of the stock certificate. After his death, the wife sought to quiet title in the stock on her own behalf. The trial court held that the husband had made a valid inter vivos gift to his daughter.

In *Bunt,* we stated that "[a] gift is without consideration, and for that reason fails as a contract until executed. Delivery is the adrenaline that makes it a contract executed." *Id.* 81 S.D. at 258, 134 N.W.2d at 2–3. The fact that the stock certificate was issued in joint tenancy was a key factor in *Bunt.* Thus, even though the husband retained possession of the certificate, we found that he surrendered exclusive possession and control over it when he placed ownership in the daughter and himself. *Id.* 81 S.D. at 258–259, 134 N.W.2d at 3.

"The delivery of a gift may be either actual or constructive, depending upon the circumstances under which the gift is made." *Id.* 81 S.D. at 259, 134 N.W.2d at 3. *Bunt* affirmed the trial court's finding of a constructive delivery based on the fact that each cotenant has an equal right to possession, that physical possession of the stock certificate could not be maintained by both parties simultaneously, and because the law contemplates that possession by one cotenant is possession for both. *Id.*

By contrast, there is no written documentation in the instant case to indicate that Fiksdal relinquished exclusive possession and control over the coin collection when he "delivered" it to Borghild's house after their marriage. On the contrary, the record reflects that the coin collection continued to be Fiksdal's most prized possession, that he worked on it daily, and that he remained actively involved with the collection until his death. The evidence also shows that Fiksdal traded coins from his collection, sold off duplicates when necessary, and otherwise attended to all matters concerned with the collection.

There was testimony to the effect that Fiksdal was an astute businessman and meticulous record keeper. At the hearing, Fiksdal's son referred to the coin collection as his father's "essence." Based on the

foregoing, a question is raised as to why Fiksdal did not reduce to writing the fact that he made a gift of this magnitude to his wife. Borghild argues that her late husband never told anyone that he had given her the coin collection, nor memorialized it in any fashion, because he did not want to invoke the criticism of his children. However, the children were unaware of the amount of money Fiksdal intended to leave Borghild while he was still living, because the evidence was locked away in a safety deposit box.[1] The executor argues that in keeping with his habit of accurate record keeping and in view of the importance of his coin collection, Fiksdal could have resolved all dispute by writing down the fact that he had gifted the coin collection to his wife. He then could have stored this information in a similar manner to ensure the necessary confidentiality until his death.

The trial court further found pursuant to Paragraph 4 of the Prenuptial Agreement, that Fiksdal retained the capacity to make gifts to his wife and that she retained the capacity to accept them. Therefore, based upon Fiksdal's statements prior to marriage, the fact that he moved the coin collection to Borghild's house, and that, according to Borghild, Fiksdal referred to the collection as "yours" or "ours," the trial court concluded that Borghild accepted the coin collection and relied on Fiksdal's statements that it was hers.

As mentioned previously, the donor's intent must be shown in order to determine that a gift has been made. *Owen*, 351 N.W.2d at 142. The trial court found that Fiksdal manifested the requisite donative intent through the following actions:

—Fiksdal combined some of the coins from Borghild's collection with his

own, and some of them were marked "BP" (Borghild Peters [Fiksdal]).

—On one occasion while working on his coin collection, Fiksdal told Borghild's nephew that, "These are Borg's too."

—On several occasions Fiksdal told Borghild, "These are yours too."

—Fiksdal insisted that Borghild attend coin collector's conventions with him so that she could familiarize herself with coins and their values.

—Borghild suggested that Fiksdal sell duplicate coins to pay off some bills, and he did so.

—When Borghild complained about the bulk of the collection, Fiksdal said, "Why are you complaining, these are yours too."

Additionally, Borghild testified that on one occasion, while discussing the fact that she had nothing in writing to prove ownership of the coin collection, Fiksdal said, "My word is good enough. Possession is nine-tenths of the law." The trial court based the above findings on Borghild's uncorroborated testimony. She did not call one independent witness who had been informed that Fiksdal gifted the coin collection to her prior to his death.

Borghild's nephew, Charles Chilson, testified that Fiksdal told him, "Well you know these are Borg's too," in reference to some commemorative coins that he was working with which were spread out on a card table in the Fiksdal's den. However, Chilson admitted under cross-examination that he did not know at that time that some of Borghild's coins, (that were separately marked), had been mixed in with Fiksdal's coin collection. Chilson further admitted that although he believed Fiksdal was referring to the specific coins on the card table, Chilson conceded that Fiksdal could

---

1. After Fiksdal's death, the Security Bank and Trust Co. of Webster was appointed Executor under the will on January 9, 1985. Mr. R.H. Garry, an employee of the Security Bank, examined Fiksdal's records, described them as the most complete set that he had ever seen and stated that there was nothing contained therein that would indicate that Fiksdal intended to give his coin collection to Borghild Fiksdal.

Fiksdal maintained a safety deposit box at a bank in Sturgis in his name and Borghild's. Contained therein were 75 Series E bonds, 5 savings certificates, a joint checking account checkbook and 105 stock certificates, totaling $160,000.00. All of these bonds, certificates and stock were originally owned by Fiksdal *alone* and were placed in his name and Borghild's in the late 1970's. All of this was done by him without her knowledge.

just as well have been referring to coins in general.

Fiksdal's son, John, testified that shortly after his father's death, Borghild said to him, "I did not sign away my widow's third and the coins are mine." According to John, Borghild did not say anything about the coins being a gift to her from his father.

Furthermore, John testified that several months after his father married Borghild, Fiksdal left a family gathering with John and drove them west of town so they could have a private conversation. John stated that his father explained his relationship with Borghild in great detail, and then made the following statements.

I don't want this to affect you kids at all, though. We're—we're together and we're very happy but we've signed a paper and—and this paper states that what is mine or what was mine going into the wedding will remain mine and what is hers going into the wedding will remain hers.

John testified that his father then explained the Prenuptial Agreement in rough detail. John stated that Fiksdal mentioned his collections, his businesses, the lake cabin, and the fact that he was going to sell the [Fiksdal] family house. According to John's testimony, his father stated that all of those items were to remain Fiksdal's regardless of the second marriage.

A review of the trial court's findings indicates that great emphasis was placed on Paragraph 4 of the Prenuptial Agreement wherein the parties reserved the right to make gifts to each other during their marriage. However, the findings also indicate that Borghild "accepted" the alleged gift *when* she agreed to marry Fiksdal. Under this theory, it follows that she would have accepted the coin collection sometime *before* signing the agreement and actually marrying Fiksdal. The trial court conclud-ed that the "delivery" element was completed later, when Fiksdal physically transferred the coin collection into Borghild's house after their marriage. Under these circumstances, Paragraph 4 is of little consequence. To further complicate matters, Borghild now suggests that she didn't accept the gift until after the parties were married when Fiksdal transferred the coin collection to her house. This assertion runs contrary to the trial court's findings.

The record and evidence in the present case leads us to the following conclusions:

—That Fiksdal's Will and Codicil appear to negate any gift of the coin collection prior to his marriage to Borghild.

—That the Prenuptial Agreement which was freely and voluntarily entered into between these parties, specifically states that whatever property the parties brought into the marriage would remain their separate property.

—That the absence of any written record or other documentation to reflect the gift of the coin collection, appears to negate Borghild's claim that Fiksdal gave it to her after their marriage, especially in light of Fiksdal's meticulous record keeping and the coin collection's value of several hundred thousand dollars.

—That at all times after their marriage, Fiksdal continued to have complete control and possession of the coin collection, which included trading, buying, and selling coins in his own name.

—That the trial court's decision was based substantially upon the uncorroborated and self-serving testimony of the surviving spouse.[2]

■ The record shows that during the interval of approximately eight years between the time of the alleged gift to Borghild and Fiksdal's death in 1984, Borghild never claimed that her husband had given her the coin collection. In applying the

---

2. *See: Matter of Estate of Raketti,* 340 N.W.2d 894 (N.D.1983), [Testimony of decedent's sister relative to decedent's promise to pay sister for services *held* completely self-serving and uncorroborated; went only to weight accorded to such testimony and not to its admissibility in probate proceeding.]; *In re Hasselstrom's Estate,* 257 Iowa 1014, 135 N.W.2d 530 (1965) [Extrajudicial self-serving statements of a party are objectionable.].

*Medin* rule, we find that Borghild was required to prove each and every element of a valid inter vivos gift *by clear* and *convincing* evidence before the trial court could award her the coin collection. We are not persuaded that she sustained this burden.

As indicated above, Fiksdal moved his coin collection into Borghild's home after their marriage. However, he also moved all the rest of his valuable collections and possessions, to which Borghild made no claim. In addition, Fiksdal continued to maintain exclusive control over the coin collection until his death. Finally, if Borghild "accepted" the gift when she agreed to marry Fiksdal, then the evidence of his Will and Codicil and their Prenuptial Agreement appear to nullify that acceptance. Since Borghild first asserted a claim to the coin collection after her husband's death, she failed to prove the requisite elements of intent, acceptance, and delivery by clear and convincing evidence. In fact, we find Borghild's claim of a gift inconsistent with the course of conduct followed by these parties. Therefore, based upon the guidelines set forth in *Medin, supra,* we hold that the trial court failed to apply the proper standard of proof and erred in concluding that Fiksdal made a valid gift to his wife either before or after the marriage.

Accordingly, we reverse the trial court's decision and remand this cause with instructions to enter a judgment that the coin collection is an asset of the J.R. Fiksdal estate.

All the Justices concur.