In the Matter of the ESTATE OF Bernard W. WIARDA, Deceased.

BETHANY PRESBYTERIAN CHURCH and First Congregational United Church of Christ, Appellees,

v.

Irving WIARDA, Stephen Wiarda, Stephanie Wiarda Schlichling, Elizabeth Norrell, Dean Wiarda, and Darius Wiarda, Appellants.

No. 92–1003.

Court of Appeals of Iowa.

Oct. 5, 1993.

Robert W. Thompson of Thompson & Metcalf, P.C., Reinbeck, for appellants.

T.J. Heronimus and Kirby Schmidt of Kliebenstein, Heronimus, Schmidt & Geer, Grundy Center, for appellees.

Heard by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

The Bethany Presbyterian Church, located in Grundy Center, and the First Congregational United Church of Christ, located in Iowa Falls, filed a petition in probate seeking to establish and have admitted to probate a lost will of Bernard Wiarda. Dean Wiarda, Bernard's brother, had been granted letters of appointment as administrator and had already commenced intestate proceedings.

This action involves Bernard's 1986 will. The Grundy Center and Iowa Falls churches are the beneficiaries in Bernard's 1986 will. A thorough search failed to disclose an executed will. An unsigned copy of a 1986 will, however, was found in Bernard's safe-deposit box.

On May 15, 1992, the district court determined the 1986 will was a lost will and should be admitted into probate. The heirs of Bernard's estate appeal.

Bernard Wiarda died in April 1990. He was survived by three brothers, one sister, one nephew, and one niece. Bernard's wife, Viola, had passed away in July 1983. They had no children. Viola's funeral was conducted in the Bethany Presbyterian Church located in Grundy Center. The couple had been married in the same church in November 1940. Viola's father had been an early member of the Bethany Presbyterian Church, and the church was considered as her family's church. Bernard and Viola later resided in Iowa Falls. During this time, they were active members of the First Congregational United Church of Christ. Bernard continued to attend this church on a regular basis after Viola's death.

Testimony from several witnesses at trial indicated Bernard was estranged from the rest of his family due to a controversy surrounding his mother's estate in .1968. Bernard told various friends he disliked members of his family and they would not inherit anything under the will.

In March 1988 Bernard was placed under an involuntary guardianship. Dean Wiarda sought the guardianship and was appointed Bernard's guardian and conservator on March 21, 1988. Two days later Dean admitted Bernard to a nursing home. Dean later discovered the 1986 will in Bernard's safe-deposit box. After Bernard's death in April 1990, it was determined the will was only the unsigned copy.

Attorney John Whitesell testified he gave Bernard the signed original 1986 will and an unsigned copy. Whitesell placed the original signed will in a white or off-white envelope and placed the unsigned copy in a separate brown envelope. Bernard indicated to Whitesell he was going to place the will in his safe-deposit box. Only the unsigned copy of the 1986 will was found in the safe-deposit box in a white envelope with "Will" written on the front of the envelope.

■ This action was triable in probate as one at law without a jury. *In re Estate of Crozier*, 232 N.W.2d 554, 556 (Iowa 1975); *In re Estate of Hoxsey*, 225 N.W.2d 141, 142 (Iowa 1975). Our review is not de novo but only upon the errors assigned. *Crozier*, 232 N.W.2d at 556; *Hoxsey*, 225 N.W.2d at 142. If substantial evidence supports the trial court's findings of fact, such findings are binding upon this court. *Hoxsey*, 225 N.W.2d at 142. This principle is true only if in reaching the fact findings the court applied the proper rules of law. *Crozier*, 232 N.W.2d at 558 (citations omitted).

The district court mapped out the times and terms of wills Bernard had executed over the years. The court found:

On February 6, 1959, Bernard Wiarda drafted a Will in which he devised everything to Viola [his wife] and in the event Viola would predecease him, the property would pass to certain members of her family. On May 7, 1973, he drafted another Will leaving everything to Viola and again providing that in the event of Viola's death, the property would pass to certain members of Viola's family. On June 12, 1974, he drafted another Will with essentially the same terms as the 1973 Will but changed the executor. On November 14, 1983, he executed another Will in which he devised all of his property to members of Viola's immediate family. On October 31, 1984, he executed another Will in which he devised $3,000 to Bethany Presbyterian Church of Grundy Center and the residue of his estate to two of Viola's nieces. On April 23, 1986, he executed the Will in question in which he devised ¾ of his estate to the Bethany Presbyterian Church of Grundy Center, Iowa and ¼ of his estate to the First Congregational United Church of Christ in Iowa Falls, Iowa.

■ The legal principles governing the establishment of a lost will have been set forth by the Iowa Supreme Court:

[T]o establish a lost will it is incumbent upon the proponent to prove by clear, satisfactory and convincing evidence (1) due execution and former existence of the alleged will (2) that it has been lost and could not be found after diligent search (3) that the presumption of destruction by decedent with intent to revoke it, arising from its absence at death, has been rebutted, and (4) contents of the will.

*In re Estate of Fisher*, 344 N.W.2d 579, 581 (Iowa App.1983) (quoting *Crozier*, 232 N.W.2d at 556 (citations omitted)). The evidence need not be free from doubt. *Id.*

The district court found proponents had established by clear and convincing evidence the 1986 will had been executed, a diligent search had been made for an original will, the presumption of destruction had been rebutted, and the contents of the 1986 will. Dean Wiarda made a thorough search of Bernard's residence, documents, and safe-deposit box. Appellant also contacted attorney John Whitesell, who had prepared Bernard's 1983, 1984, and 1986 wills, and two other banks located in Iowa Falls in an attempt to find an original will. An original will was not found. The unsigned copy of the 1986 will provides all of Bernard's estate is be devised to the Bethany Presbyterian Church and the First Congregational United Church of Christ. Attorney Whitesell testified regarding the execution of the 1986 will and its provisions and stated the reasons Bernard gave for the bequests.

■ On appeal appellant raises one issue; he only contends the third requirement for establishing a lost will has not been satisfied. Appellant contends proponents failed to present sufficient evidence to rebut the presumption Bernard did not destroy his will with the intent to revoke it. The two churches had the burden to rebut the presumption by clear and convincing evidence. *In re Estate of Givens*, 254 Iowa 1016, 1022–23, 119 N.W.2d 191, 195 (1963). The district court held proponents produced clear and convincing evidence Bernard did not destroy his will with the intent to revoke it. ˙The district court's conclusion is binding on us if supported by substantial evidence. *See Fisher*, 344 N.W.2d at 581 (citing *Crozier*, 232 N.W.2d at 558; Iowa R.App.P. 14(f)(1)). We determine substantial evidence supports the district court's conclusion proponents sufficiently rebutted the presumption of revocation. We affirm.

■ The presumption of revocation may be overcome by proof of declarations made by decedent, "by proof of the circumstances of the testator, or of his relations to the persons involved." *Givens*, 254 Iowa at 1025, 119 N.W.2d at 196 (citations omitted); *Goodale v. Murray*, 227 Iowa 843, 863, 289 N.W. 450, 460 (1940). Declarations made by Bernard to disinterested persons weakened the presumption of revocation. *See Givens*, 254 Iowa at 1025, 119 N.W.2d at 196 (citations omitted). Bernard had told several people of his dislike for his own family members and had stated they would not share in his estate. It was undisputed there was little, if any, contact between Bernard and the members of his family. Glenna Lebeda, Bernard's first cousin, testified she had remained close friends with Bernard over the years. She claimed Bernard often talked to her about his bitterness toward his family members. She said Bernard had stated his family members would not share in his estate. *See Goodale*, 227 Iowa at 863, 289 N.W. at 460. Mildred Santee, a lifelong friend of Bernard's and member of the First Congregational Church of Christ, also testified. She maintained contact with Bernard on a regular, if not daily, basis until he went to the nursing home. Santee stated Bernard frequently expressed to her his dislike for members of his own family. She stated Bernard had said, on more than one occasion, he was not leaving his property to his family. Lois Sailer, another close friend of Bernard's, testified Bernard had stated he did not want any of his money to go to his family. Sailer talked with Bernard several times a week. Both witnesses testified Bernard had said he had placed his will in his safe-deposit box.

Proponents also presented testimony showing Bernard's feelings of kinship with the two churches. Lebeda testified Bernard told her he had made a new will in which he gave his entire estate to the Bethany Presbyterian Church and the First Congregational Church. She stated Bernard felt a close relationship to these churches as he and Viola were married in one, and had attended both. Attorney Whitesell also testified Bernard indicated he had made the changes reflected in the 1986 will because he and Viola had been married in the Grundy Center church, Viola's father helped to start the Grundy Center church, and he regularly attended the Iowa Falls church.

Other facts served to further weaken the presumption of revocation. There was no direct evidence Bernard destroyed his original 1986 will or ever expressed a desire to revoke it. *See Fisher*, 344 N.W.2d at 581. Attorney Whitesell had prepared Bernard's three prior wills. Bernard never talked to attorney Whitesell about changing or revoking the provisions of the 1986 will. *See id.* Bernard executed several wills over the years. Not one will provided any bequests to members of his family. This evidence shows a long-standing intent not to leave anything to the members of his own family.

Proof a person who has an adverse interest had access to the testator's will either before or after testator's death may carry weight in the determination as to whether the will was revoked by testator. Annotation, *Proof of Nonrevocation in Proceeding to Establish Lost Will*, 3 A.L.R.2d 949, 976 (1949). In his capacity as conservator, Dean Wiarda entered Bernard's safe-deposit box on March 24, 1988; March 28, 1988; and May 18, 1988. He removed all of the contents, including an envelope which had a notation written on the

outside in pencil reading "Will." The document found in the envelope was the unsigned copy of the 1986 will.

"[T]he mere fact that the contestant had an opportunity to destroy the will would not of itself overcome the presumption that it was destroyed by the testator with the intent to revoke it; still it is a circumstance to be considered with other proof."

*In re Donigian's Will,* 265 Wis. 147, 153–54, 60 N.W.2d 732, 735 (1953) (quoting *Gavitt v. Moulton,* 119 Wis. 35, 49–50, 96 N.W. 395, 400 (1903)); *see Givens,* 254 Iowa at 1023, 119 N.W.2d at 195. The district court noted the fact Dean had access to the safe-deposit box. The court also cited other actions of Dean in his capacity as conservator. Dean Wiarda failed to include a diamond ring, an initial ring, a wedding band, a banjo, a ukulele, and a new television set purchased for Bernard while he was at the nursing home in the conservatorship inventory. Dean testified he "forgot" to include these items in the inventory. Dean also sold, without court approval, Bernard's 1987 automobile to his daughter for $3500. The automobile was valued in the inventories at $5000. The weight of this evidence and credibility of witnesses was for the district court to determine. *Crozier,* 232 N.W.2d at 558; *Hoxsey,* 225 N.W.2d at 142; *Givens,* 254 Iowa at 1025, 119 N.W.2d at 196; *see also In re*

*Estate of Hasselstrom,* 257 Iowa 1014, 1021, 135 N.W.2d 530, 535 (1965) (citations omitted).

Finally it would appear if Bernard had intentionally revoked the original will of April 23, 1986, he would have destroyed the copy, or at least would not have kept it in such a safe place like the safe-deposit box at the Iowa Falls State Bank. *See Crozier,* 232 N.W.2d at 559. The bank records show Bernard rented the box on June 12, 1986, and entered the box on the following dates: June 24, 1986; July 11, 1986; March 10, 1987; August 17, 1987; August 21, 1987; and November 20, 1987. Bernard, however, never destroyed this copy.

We hold the district court's conclusion the two churches presented sufficient evidence to rebut the presumption is supported by substantial evidence in the record. The district court applied proper rules of law in reaching its determination the copy of the will of Bernard Wiarda executed on April 23, 1986, be filed and admitted into probate as the last will and testament of decedent. We affirm the decision of the district court.

**AFFIRMED.**