Delores J. ROBBINS, Plaintiff-Appellant,

v.

WHITE–WILSON MEDICAL CLINIC,
INC., Defendant-Appellee.

No. 80–5442
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

April 9, 1981.

Joseph L. Hammons, Pensacola, Fla., for plaintiff-appellant.

Peter W. Zinober, Tampa, Fla., for defendant-appellee.

Before TJOFLAT, VANCE and THOMAS A. CLARK, Circuit Judges.

VANCE, Circuit Judge:

Plaintiff, a black female, filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981 alleging defendant denied her employment on the basis of race. After a non-jury trial the district judge concluded that defendant had established a legitimate nondiscriminatory reason for not hiring plaintiff and that plaintiff had not met her burden of showing that the articulated reason was a pretext for discrimination. Accordingly, the district judge ordered judgment to be entered for defendant. On appeal Robbins challenges the holding of the district court. We reverse.

Early in January 1978, Mrs. Robbins submitted an application for employment to the White-Wilson Medical Clinic, a privately owned medical clinic located in Fort Walton Beach, Florida that provides out-patient services to residents of northwest Florida and southern Alabama. Prior to the filing of Mrs. Robbins' E.E.O.C. charge, the only black employees at the clinic worked in janitorial and housekeeping positions. At the time Mrs. Robbins applied for a position at the clinic there were no positions open; however, a job as record room clerk came open at the end of the month. Fourteen applicants, including Mrs. Robbins, were selected by Marilyn Pollard, the record room supervisor, for personal interviews. On February 3, 1978 Mrs. Robbins was personally interviewed for the record room clerk position by Mrs. Pollard. At trial Mrs. Pollard testified that when Mrs. Robbins appeared for the interview she was surprised to learn that she was black because in five years of interviewing she had never interviewed a black applicant. At the conclusion of the interview Mrs. Robbins was advised that there were other applicants to interview and that she would be called later and told whether she had been selected. When she received no word for several days, Mrs. Robbins telephoned the clinic. Mrs. Pollard told her that another applicant had been selected and stated that Mrs. Robbins had not been chosen because of her age. Shortly afterwards, Mrs. Robbins called the clinic administrator who denied that the clinic had discriminated against her because of her age which was thirty-seven. Mrs. Robbins then spoke with Mrs. Pollard again and accused her of discrimination. It was at this point that Mrs. Robbins was informed that she had not been selected because of her personality. After this second telephone conversation Mrs. Pollard made a notation on the margin of Mrs. Robbins' application: "Has a bad attitude—has called and asked many questions. She is a black girl. Could cause trouble. I don't need this one."

Mrs. Robbins filed a timely charge of discrimination against the clinic with the E.E.O.C. The E.E.O.C. failed to conclude its investigation within 180 days of filing; authorization was requested and received to file a civil suit in federal court. The instant action was filed on February 7, 1979. Before trial, the district court granted in part plaintiff's motion for summary judgment, but only to the extent that the district court concluded that there existed no issue as to plaintiff establishing a prima facie case under the test provided by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Defendant does not appeal from that ruling.

In *McDonnell Douglas Corp. v. Green*, the Supreme Court set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802, 93 S.Ct. at 1824. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825. A finding of discrimination vel

non is an ultimate fact subject to plenary review. *Thompson v. Leland Police Dep't,* 633 F.2d 1111, 1112 (5th Cir. 1980).[1]

■ The Supreme Court has recently discussed the respective burdens of plaintiff and defendant under *McDonnell Douglas* once a prima facie case has been established. *Texas Department of Community Affairs v. Burdine,* —— U.S. ——, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The opinion in *Burdine* altered the law in this circuit in two respects. Prior to *Burdine* we had held once the plaintiff had established a prima facie case of discrimination, the burden was upon the defendant to rebut this showing by a preponderance of the evidence. *Ray v. Freeman,* 626 F.2d 439, 443 (5th Cir. 1980). In addition, we required that the defendant prove that the person actually hired was better qualified than the plaintiff. *Falcon v. General Telephone Company of the Southwest,* 626 F.2d 369, 378 (5th Cir. 1980). In *Burdine* the Court rejected our interpretation of the defendant's burden:

> The burden that shifts to the defendant ... is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant.

*Id.,* —— U.S. at ——, 101 S.Ct. at 1094. It is thus clear that the defendant carries a burden of production, not a burden of proof.

The Supreme Court also stated that the employer need not demonstrate that the person actually hired was better qualified than the plaintiff. If the employer produces evidence that on the basis of legitimate, nondiscriminatory criteria the person chosen for the job possesses qualifications equal to those of the plaintiff, he rebuts the prima facie case. "[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Id.,* —— U.S. at ——, 101 S.Ct. at 1097. We note that except on this issue, while *Burdine* changes the burden upon defendant, it does not change the substantive law developed in this circuit.

■ We now apply the analysis mandated in *Burdine* to the facts of this case. At trial, the defendant attempted to show that it looked for two qualifications in applicants for the position of records room clerk. The first was certain minimal typing skills. Defendant concedes that Mrs. Robbins met this requirement and does not contend that she was denied the position on this ground.

The second qualification sought by the defendant related to personality. Defendant wanted a person who would get along well with the other employees in the working environment. For the purposes of this case we will assume the legitimacy of this qualification.[2]

1. The court stated:

The clearly erroneous standard of appellate review applies to subsidiary facts but does not apply to ultimate facts. A finding of discrimination or nondiscrimination falls into the category of ultimate fact, therefore we must make an independent determination of the allegations of discrimination. In the process we examine the record to see if the ultimate finding is supported by requisite subsidiary facts.

633 F.2d at 1112. *Accord, Parson v. Kaiser Aluminum & Chemical Corp.,* 575 F.2d 1374, 1382–83 (5th Cir. 1978), *cert. denied,* 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); *Causey v. Ford Motor Co.,* 516 F.2d 416, 420–

21 (5th Cir. 1975). The Supreme Court in *Texas Dep't of Community Affairs v. Burdine,* —— U.S. ——, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), *did not reach the question of whether a finding of intentional discrimination should be viewed as an ultimate fact. Id. at ——, 101 S.Ct. at 1097 n.12.*

2. Plaintiff does not specifically challenge the legitimacy of this qualification. We do not wish to suggest, however, any general endorsement of the proposition that Title VII claims can be defeated simply by asserting a preference for certain types of personality traits. Defendant's testimony would not support a finding that particular characteristics are essential

The evidence shows, and the district court found, that the entire evaluation process was restricted to the job interview. Although the interviewer only made recommendations to the administrator, the recommendations were routinely approved. No guidelines had been set down for the interviews, nor had the administrator ever sat in on a full interview. Everything, then, depended on the decision of the interviewer.

We have frequently noted the dangers involved in this sort of evaluation. "[S]ubjective selection processes involving white supervisors provide a ready mechanism for racial discrimination." *Johnson v. Uncle Ben's, Inc.*, 628 F.2d 419, 426 (5th Cir. 1980). *Accord, Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374, 1385 (5th Cir. 1978), *cert. denied*, 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 345 (5th Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *Rowe v. General Motors Corp.*, 457 F.2d 348, 359 (5th Cir. 1972). The Supreme Court in *Burdine* voiced similar concerns. The court stated that "the defendant's explanation of its legitimate reasons must be clear and reasonably specific" in order to rebut the inference of discrimination arising from the prima facie case and to guarantee that "the plaintiff be afforded 'a full and fair opportunity' to demonstrate pretext." —— U.S. at ——, 101 S.Ct. at 1096. Obviously, the more subjective the qualification sought and the more subjective the manner in which it is measured, the more difficult it will be for the defendant to meet the burden imposed by the court in *Burdine*.

Testimony presented at trial in this case heightens our concern. When defendant's attorney questioned the interviewer about black employees who had been hired after Mrs. Robbins' rejection, the colloquy was as follows:

Q. What about Donna Richardson? Is she presently in your department?

A. Yes, and she's real jolly and fun to be with.

Q. And how does she relate to the other people in the department?

A. Well, she's more white than she is black. Does that answer your question?

THE COURT: Well, I'm not sure I understand what you mean. Is her race black?

A. Uh-huh.

THE COURT: But she's, in your thinking, more white than she is black?

A. Yeah. She's, you know, she's—her father was military, right, so if you're military, well, you know, you're not a military man but if you've been in the military you're around a lot of black and white people. You go to school with a lot of whites, right, if you're in the military, especially overseas. My kids did.

THE COURT: But you make a distinction between white people and black people in your thinking, and she's more white than black?

A. Yes, she is.

THE COURT: What does that distinction mean between black people and white people, that she's more white?

A. Well, she's just, I think of her as being very normal, just, I mean, being just like—I feel like she's just a white person. I don't think of her—you're saying is she black or white. I'm saying as far as I'm concerned she's white.

The trial judge was properly concerned by these remarks, and questioned the interviewer carefully. Further testimony concerning Mrs. Pollard's social relationships showed no evidence of racial prejudice. The court found that while "she associates in her own mind certain personality characteristics as being more prevalent in the white than in the black race," nevertheless "she possesses no racial bias or animus as such." We agree that the evidence supports these findings, but we believe that the court below drew incorrect legal conclusions from them.

---

to the effective performance of the clerk's duties, as might be the case, for example, in certain selling situations. The record room clerk, in fact, does not deal with the public at all. The only contact with individuals outside the record room seems to be in providing files for medical personnel.

This case is factually distinguishable from one involving promotion or termination in assessing whether defendant met its burden under *McDonnell-Douglas*. In her long term relationships with other people, Mrs. Pollard may judge them as individuals and not as members of a particular race. In the hiring process as conducted by defendant, however, there is no opportunity for a long term relationship to develop. The initial reaction of the interviewer was crucial. In this context, a tendency by the interviewer to assume that blacks are less likely to have appropriate personality traits than whites inevitably distorts the evaluation.

It is thus doubtful that defendant has articulated a "legally sufficient" explanation for refusal to hire plaintiff in the "clear and reasonably specific" manner required by *Burdine*. Even assuming that defendant has rebutted plaintiff's prima facie case, the evidence produced at trial clearly indicates that the proffered explanation was pretextual. We believe that this is one of those "cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant will suffice to discredit the defendant's explanation." *Burdine*, —— U.S. at ——, 101 S.Ct. at 1095 n.10.

Accordingly, we reverse and direct that judgment be entered for the plaintiff.[3]

**REVERSED AND REMANDED.**

---

**3.** Our result would be the same were we to apply the clearly erroneous standard. This court is "left with the definite and firm conviction that a mistake has been committed." *Kingsville Independent School Dist. v. Cooper,* 611 F.2d 1109, 1113 (5th Cir. 1980), quoting *United States v. U. S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).