WOODBURY COUNTY, Iowa, Appellee,

v.

IOWA CIVIL RIGHTS COMMISSION, Appellant.

No. 67655.

Supreme Court of Iowa.

June 15, 1983.

Thomas J. Miller, Atty. Gen., and Victoria L. Herring, Asst. Atty. Gen., for appellant.

Roger E. McEntaffer, Asst. County Atty., for appellee.

McGIVERIN, Justice.

This appeal on further review from the court of appeals requires us to address the basic issue of whether there is substantial evidence in the record as a whole to support the decision of the respondent Iowa Civil Rights Commission that petitioner Woodbury County was guilty of intentional racial discrimination under Iowa Code section 601A.6(1)(a) in failing to hire a job applicant. On judicial review the district court, with which we agree, ruled in favor of the County. The court of appeals in a three-to-two decision went the other way. We va-cate the decision of the court of appeals and affirm that of the district court.

In 1975 the County sought applicants for the job of fiscal officer at the county employment training center. The job vacancy notice specified that a high school degree, or the equivalent, was required plus three years of experience, with the possibility of substituting specialized education in bookkeeping or accounting on a one-to-one basis for years of experience. The job was described in the notice as follows:

> Maintain daily and periodic accounts and payment records, ledgers, and logs; maintain records of allowance, supportive service, and training payments; maintain personnel records; prepares periodic and internal reports; assist in Management Information System; prepares Federal reports; maintains property inventory; prepares RFP and purchasing records; analyze Federal Regulations, field memoranda, and contracts for allowable costs; audits vouchers; may supervise subordinates; related work as required.

Complainant Carolyn Lee, a naturalized citizen of Chinese extraction, applied for the job. Lee had an undergraduate degree in economics at Taiwan University in 1967 and was working on her MBA; in all, she had about fifteen hours of accounting. She also had some work experience in accounting but at the time she applied for the job as fiscal officer, she was working in the county auditor's office as a tax clerk.

Thirteen people were interviewed for the job. The successful candidate, Sandra Miller, a white woman, had an undergraduate degree in accounting and management, no graduate work, but some work experience in accounting.

When she learned that another woman had been hired, Lee called the interviewer, Bruce Lambertson, and inquired why she had not been hired. Lambertson told Lee that she was qualified for the job, but she probably would get bored with the routine and quit.

Lee filed a complaint with the Iowa Civil Rights Commission alleging that she had

been discriminated against on account of her race. Iowa Code § 601A.6(1)(a) (1975) ("(1) It shall be an unfair or discriminatory practice for any: (a) Person to refuse to hire ... any applicant for employment ... because of the ... race ... of such applicant....."). Specifically, Lee complained that she had been given only a 15–20 minute interview while the other candidates had been interviewed for 30 minutes, and she had not been asked a hypothetical question which required the interpretation of a federal regulation with which the fiscal officer would be working.

Lee's complaint worked its way through the normal administrative procedures of the Commission and a public hearing upon the complaint finally was held on June 6, 1980. Testimonial and documentary evidence was received. The hearing officer noted that the recollections of both Lee and Lambertson were somewhat unclear after the passage of over five years, but he found Lee to be the more credible witness and recommended a decision in her favor. The final order of the Commission found that the County had discriminated against Lee. Iowa Code § 601A.15(8) (1979).

The County sought judicial review. Iowa Code §§ 601A.17(1), 17A.19(1) (1979). The district court reversed the Commission's decision and dismissed Lee's complaint because "there [was] not substantial evidence in the record as a whole that Woodbury's articulated reasons for not hiring [Lee] for the position were pretextual."

The Commission appealed and the case was transferred to the court of appeals which reinstated the decision of the Commission on the basis of the hearing officer's assessment of the witnesses' credibility.

The County sought and was granted further review.

■ I. *Scope of review.* In cases such as this the appellate courts sit to correct errors of law made by the district court on judicial review. To this end we apply the substantial evidence rule of section 17A.19(8)(f) to determine whether our conclusions are the same as those of the district

court. *Peoples Memorial Hospital v. Iowa Civil Rights Commission,* 322 N.W.2d 87, 90–92 (Iowa 1982). The substantial evidence rule requires us to review the record *as a whole* to determine whether there is sufficient evidence to support the decision the commission made. Iowa Code § 17A.19(8)(f) (1983); *City of Davenport v. Public Employment Relations Board,* 264 N.W.2d 307, 311 (Iowa 1978) ("[T]he entire record must be considered in determining whether the challenged finding has sufficient support.").

■ The hearing officer's finding of credibility, while not to be taken lightly, is but one part of the entire record which we must review. The hearing officer's finding as adopted by the Commission can be set aside if not supported by substantial evidence.

These principles are consistent with the Supreme Court's often quoted explanation of the federal Administrative Procedure Act in *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951):

> [A] reviewing court is not barred from setting aside [an agency] decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, *including the body of evidence opposed to the [agency's] view.*
>
> \* \* \* \* \* \*
>
> The [agency's] findings are entitled to respect; but they *must* nonetheless *be set aside when the record on [judicial review] clearly precludes the [agency's] decision from being justified* by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.
>
> \* \* \* \* \* \*
>
> The significance of [the hearing officer's] report ... depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum de-

termine whether evidence is "substantial."

*Id.* at 488, 490, 496–97, 71 S.Ct. at 465, 469, 95 L.Ed. at 468–69, 472 (emphasis added). *See also Iowa State Fairgrounds Security v. Iowa Civil Rights Commission,* 322 N.W.2d 293, 295 (Iowa 1982); *City of Davenport v. Public Employment Relations Board,* 264 N.W.2d 307, 312 (Iowa 1978).

II. *Sufficiency of the evidence.* Like the district court, we must apply the substantial evidence test to the entire record, not just the hearing officer's findings of witness credibility. In looking for substantial evidence to support the decision of the Commission, therefore, we will review not only the testimony of Lee and Lambertson and the hearing officer's finding as to their credibility, but also all other testimony and documentary evidence, including notes Lambertson made at the time of the interviews in 1975.

The nature of the evidentiary burden in a case of disparate treatment in hiring was set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973). *See Linn Co-operative Oil Co. v. Quigley,* 305 N.W.2d 729, 733 (Iowa 1981) (*McDonnell Douglas* analytical framework applied in sex discrimination discharge case); *see also King v. Iowa Civil Rights Commission,* 334 N.W.2d 598 (Iowa 1983) (application of *McDonnell Douglas* to religious discrimination case.).

■ A. *Prima facie case.* The complainant, who bears the ultimate burden of persuasion that she was intentionally discriminated against, must first establish a prima facie case of discrimination by a preponderance of the evidence. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215 (1981). This burden is met in the present case if the complainant establishes substantial evidence (1) that she was a member of a protected class; (2) that she was objectively qualified for the position; (3) that she was excluded from the final group of candidates; and (4) that a member of a non-protected class with similar qualifications was hired. *Peters v.*

*Lieuallen,* 693 F.2d 966, 969 (9th Cir.1982) (disparate treatment in hiring from a single pool of applicants); *see also United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (prima facie case of racial discrimination shown by evidence that (1) employee was black, (2) that he applied for a promotion for which he possessed minimum qualifications, and (3) that the employer selected a non-minority applicant).

■ The County does not seriously contend that Lee has not satisfied this burden and we conclude that she clearly did. Lee, who is of Chinese extraction, was told by Lambertson that she was qualified. Nonetheless, Lambertson testified that Lee had not been on his list of the top three or four candidates from which he made his final selection. Finally, the job went to a white woman.

■ B. *Employer's response.* Having found that the Commission was correct in concluding that Lee carried her initial burden, we move to the second step of the analysis. At this juncture the County's articulation or evidence must raise a genuine issue of fact as to why it did not hire Lee. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094, 67 L.Ed.2d at 215; *Quigley,* 305 N.W.2d at 733.

The hearing officer correctly stated that the County's contentions as to the non-discriminatory reason for not hiring Lee must be *found in the record.* However, he further stated, "the testimony of Bruce Lambertson is the only evidence offered to establish a non-discriminatory reason for hiring Sandra Miller instead of Carolyn Lee." Ignoring his earlier correct statement of the law, the hearing officer and the Commission relied solely on Lambertson's testimony and focused on three reasons for not hiring Lee: (1) she was "reticent" during the interview, (2) Lambertson perceived her as being too "rigid" to adapt to the constant changes in the federal regulations with which she would be working, and (3) a concern she would stay on the job only for a short period of time.

■ There is substantial evidence in the record of other legitimate reasons for not hiring Lee which, as a matter of law, should have been considered by the Commission in assessing the County's articulated reasons. The following reasons were also articulated: (1) Miller had four years of accounting in college while Lee's undergraduate degree was in economics and, including her work on her uncompleted MBA, she had approximately 15 hours of accounting; (2) Miller's recent job experience which included working as an accounts payable clerk, a bank management intern and a reconciliation clerk was more relevant than that of Lee, whose only real experience as an accountant was in 1967–68 and subsequent work experience did not involve accounting to any substantial degree; and (3) only seven of the thirteen applicants were asked a hypothetical question requiring interpretation of a federal regulation.

When the record is viewed as a whole, we cannot hold that substantial evidence supports the Commission's conclusion that it could not "find that a rational, nondiscriminatory reason has been shown for not hiring Carolyn Lee." On the contrary, the record is replete with substantial evidence of legitimate, non-discriminatory reasons for the hiring decision. *See Robbins v. White-Wilson Medical Clinic*, 642 F.2d 153, 155 (5th Cir.1981) ("If the employer produces evidence that on the basis of legitimate, non-discriminatory criteria the person chosen for the job possesses qualifications equal to those of the [complainant], he rebuts the prima facie case.").

As the First Circuit has stated:

The employer's stated legitimate reason must be reasonably articulated and non-discriminatory, but does not have to be a reason that the judge or jurors would act on or approve. Nor is an employer required to adopt the policy that will maximize the number of minorities, women, or older persons in his work force. An employer is entitled to make his own policy and business judgments, and may, for example, fire an adequate employee if his reason is to hire one who will be even better, as long as this is not a pretext for discrimination. (Citation omitted.)

The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as a pretext, if, indeed it is one. The [trier of fact] must understand that its focus is to be on the employer's motivation, however, and not on its business judgment. (Citation omitted.)

*Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n. 6 (1st Cir.1979).

■ C. *Pretext*. Since the County's evidence generates a genuine issue of fact as to the motivation behind the hiring decision, Lee next must demonstrate that the proffered justifications of the County's hiring decision were merely pretextual. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1095, 67 L.Ed.2d at 215. Lee may successfully discharge this burden "either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. We agree with the district court that there is not substantial evidence in the record as a whole that Lee met this burden.

■ Lee focuses her argument on what she terms the subjective factors which arose from the interview: "reticence" and "rigidity." She correctly points out that subjective job criteria present a potential for abuse which often provides a ready mechanism for racial discrimination. *Cf. Nanty v. Barrows Co.*, 660 F.2d 1327, 1334 (9th Cir. 1981) (requirement that furniture delivery truck driver be neat, articulate and personable); *Robbins*, 642 F.2d at 156 (applicant not hired because of her personality; interviewer noted on application: "Has a bad attitude—has called and asked many questions. She is a black girl. Could cause trouble. I don't need this one."). This is not to say, however, that subjective criteria may not enter into the hiring decision. The traditional management prerogatives are not diminished; "the employer has discre-

tion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Burdine,* 450 U.S. at 259, 101 S.Ct. at 1097, 67 L.Ed.2d at 219.

The job description for the fiscal officer position did not describe a job for which purely objective physical skills were required. Not only did the job require accounting and bookkeeping skills, it also required the skills necessary to supervise subordinates. The use of some subjective criteria, therefore was not inherently suspect. *See Nanty,* 660 F.2d at 1334.

Though ignored by many involved with this case, the County also articulated reasons which were objective—the educational backgrounds and work experience of Miller and Lee. This information was provided by each applicant on the application form. When we review the entire record we find that Lambertson was confronted with a number of qualified applicants, some, other than Miller, with qualifications perhaps better than Lee's. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1925, 36 L.Ed.2d at 679 (relevant to a showing of pretext is evidence of treatment of Whites under circumstances the same as complainant's.). Compare, for example, the interviewer's remarks and the qualifications, as shown on the application forms in the record, of Lee, Miller, and some of the other applicants.

Lee: qualifications—15 hours of accounting; and the following work experience: clerk in Woodbury County auditor's office (at time of interview); Unity Co., editor (1969–71); St. John's and St. Mary's Institute of Technology, accountant for one year (1967–68).

> comments—Reticent; due to interview situation perhaps. Dislikes routine work, enjoys theoretical—perhaps too rigid, could not adjust easily to changed interpretations.

Miller: qualifications—undergraduate degree in accounting; presently employed as accounts payable clerk for 5 months plus experience as intern in bank management (January—March 1975) and as a reconcilement clerk (May 1974—January 1975); worked as a nurses aide (1970–74).

> comments—Don't believe stop-gap, husband is working. Bright, qualified tho no experience w/Fed. programs—Responded correctly to technical questions. Personable, could work with staff and clients.

B.L.E.: qualifications—one year of accounting at college level, presently employed as bookkeeping clerk.

> comments—Lacks experience or background directly attributable. Offered reasonable responses to technical questions, however, analytical aptitude may be questioned—*answers required some coaxing*—could handle job, would require supervision; may be reluctant to act independently when necessary.

(Emphasis added.)

P.E.B.: qualifications—approximately five years of accounting experience.

> comments—Experience applicable—would be there till after tax season; but willing to let the job go—could be stop-gap.

M.C.P.: qualifications—undergraduate degree in accounting; employed as internal auditor for corporation.

> comments: Lacks experience, but analytical, academically qualified—prefers to stay in area—personable. Job could be stop-gap. Easy to communicate with.

F.G.S.: qualifications—work experience as restaurant manager—set monthly budgets; accountant and program director of senior citizen center.

> comments: Qualified—seems prefer government employment—perhaps for security—would have ability for job. Could do detail, would have more difficulty with interpretations.

K.C.S.: qualifications—jr. accounting certificate plus 10 years experience in accounting field; one year of accounting at college level.

> comments: Relevant experience, familiarity with Federal regulations and with basic idea of manpower programs. May be reluctant to make changes in response to Federal or local directive. Has analytical ability. Job not stop-

gap, and not under-employed—experience and education fit job well.

■ Based on the record as a whole we do not find substantial evidence to support the Commission's finding that "even if the [County] had established a non-discriminatory reason for the selection of [Miller] it would have been so insubstantial that the complainant would have been successful in showing it to be a pretext." The evidence shows that Lambertson relied on objective facts of education and work experience supplied by each applicant. Additionally, the subjective notations made during the interviews reflect consistent concerns of Lambertson regarding each interviewee's ability to perform the duties specified in the job description. We note also that while Lambertson's testimony concerning these notations is subject to the hearing officer's finding of credibility, this finding has no bearing on the actual notations as they were made at the time of the interviews five years earlier.

■ In sum, we cannot find substantial evidence which demonstrates that the reasons offered by the County were merely pretexts for intentional discrimination. When the record is viewed as a whole, including the evidence contrary to the Commission's order, the record shows the County exercised its discretion to choose among equally or similarly qualified applicants. There is no evidence the decision to hire Miller was based on unlawful criteria. The fact that the Commission may have thought that the County misjudged the qualifications of Lee does not in itself expose the County to liability. *See Coble v. Hot Springs School District No. 6*, 682 F.2d 721, 727 (8th Cir.1982). An employer has discretion to choose among equally qualified candidates and is not required to give preferential treatment to minorities or women under the federal civil rights act, 42 U.S.C. § 2000e–2(j) (1976). *Burdine*, 450 U.S. at 259, 101 S.Ct. at 1096, 67 L.Ed.2d at 219. We conclude the same is true under Iowa Code chapter 601A. The findings of the Commission must be set aside; the record viewed as a whole clearly precluded the Commission's decision from being justified. *See Universal Camera*, 340 U.S. at 490, 71 S.Ct. at 465, 95 L.Ed. at 468–69.

■ We have considered all of the contentions raised by the parties but have discussed only those applicable to the outcome we reach. When the record is reviewed as a whole, Iowa Code § 17A.19(8)(f), we cannot find substantial evidence to support the Commission's decision that Lee met her ultimate burden of proving intentional racial discrimination under section 601A.6(1)(a). Therefore we vacate the decision of the court of appeals and affirm that of the district court.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.

All Justices concur except SCHULTZ, J., and REYNOLDSON, C.J., and HARRIS, J., who concur in part and dissent in part, and McCORMICK and WOLLE, JJ., who take no part.

SCHULTZ, Justice (concurring in part, dissenting in part).

I concur in all parts of the majority opinion except part II(C) from which I must respectfully dissent. Although I agree that the district court was correct in reversing the Commission's decision, I disagree that there is not substantial evidence to support a finding that the reasons given for Lee's rejection were pretextual. I would hold that there is sufficient evidence to make the alleged discrimination a question of fact. I would remand this matter to the Commission for a redetermination in accordance with this opinion.

I believe that the majority opinion contains an inconsistency. It first determines that Lee has made a prima facie case of discrimination and then it determines that there is not sufficient evidence of discrimination to produce a fact question. The prima facie showing is not a factual finding of discrimination and it may be rebutted; however, it is proof of action taken by the employer from which we infer a discriminatory intent because experience has proven

that in the absence of explanation it is more likely than not that those actions were based on discriminatory considerations. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957, 967 (1978). This inference creates a rebuttable presumption that the employer unlawfully discriminated against the complainant and is sufficient to prevent dismissal of the case. When the employer responds by offering evidence that complainant was rejected for a legitimate nondiscriminatory reason, the presumption "drops from the case" and the "factual inquiry proceeds to a new level of specificity." *United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, ——, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, 410 (1983). The inference drawn from the complainant's evidence remains, however, and it may be considered in determining whether complainant has met the ultimate burden of proving discrimination. When "a presumption is based on a 'logical core', even though the presumption were eliminated, the inference created by the logical core would remain." M. Ladd, *Outline,* 86 Iowa State Bar Association Annual Meeting (June 1959), *quoted in In re Estate of Givens,* 254 Iowa 1016, 1025, 119 N.W.2d 191, 194 (1963). Dean Ladd stated, "This simply means that if, in the absence of rebutting proof, the jury (or the court) would be compelled to find a certain presumed fact, they may still find that fact after rebutting testimony if they regard the logical deduction therefrom more probable than the testimony against it." *Id.*

If the inference from the evidence is sufficient to make a prima facie case of discrimination, the inference is also substantial evidence of discrimination to produce a question of fact for determination by the factfinder. We infer from the evidence that was presented to show the prima facie case that it is more likely than not that the complainant was discriminated against. When the employer shows evidence of a nondiscriminatory reason for the rejection of the complainant it rebuts the presumption, but does not destroy the inference. Instead, the employer's evidence joins the inference to produce a fact issue.

There is evidence that Lee was given an abbreviated interview and was not asked a hypothetical question asked of several other applicants. She was judged partly on subjective factors which the factfinder may determine are pretextual. The factfinder must determine Lee's qualifications in relation to the other applicants. It must be remembered, however, that even if the Commission finds that the respondent misjudged Lee's qualifications, this misjudgment does not necessarily prove discrimination. The finding may be probative of whether the employer's reasons are pretext for discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 259, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207, 219 (1981).

In summary, there is substantial evidence in the record that would support a finding of discrimination. This court should not weigh the evidence and finally determine the facts. That is the Commission's responsibility. That agency should review the entire record in accordance with the matters discussed in divisions I and II(A) and (B) of the majority opinion, along with other appropriate statutory and established principles of law, before arriving at a factual determination.

REYNOLDSON, C.J., and HARRIS, J., join in this concurrence in part and dissent in part.