Clara **WRIGHT,** Plaintiff–Appellant/Cross–Appellee,

v.

**WATERLOO WATER WORKS and the Water Works Board of Trustees, Reed Craft and Dick Main, Defendants–Appellees/Cross–Appellants.**

No. 90–1730.

Court of Appeals of Iowa.

Oct. 27, 1992.

Thomas Mann, Jr., Austin, TX, for plaintiff-appellant.

Larry J. Cohrt of Swisher & Cohrt, Waterloo, for defendants-appellees.

Considered by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

HABHAB, Judge.

## FACTS

On July 9, 1979, Clara Wright, a black woman, began employment with the Waterloo Water Works as a customer service clerk. The utility is municipally-owned and operated by a board of trustees. In January of 1987, Wright read an article in the *Waterloo Courier* listing the salaries of the clerical workers at the utility. According to the article, Wright was paid twenty cents less per hour than her coworkers. Wright met with Reed Craft, the general manager, and Richard Main, the office manager, regarding the discrepancy in pay. They told Wright her excessive absenteeism required she be paid somewhat less.

On March 4, 1987, Wright filed a formal complaint of racial discrimination with the Waterloo Human Rights Commission. Wright alleged her white coworkers were receiving higher pay even though they had less seniority and experience. When officials from the commission spoke with Craft, Craft stated that generally all the clerical jobs were considered equal.

Wright alleged that after filing her complaint, she was subjected to actions of harassment by her supervisors and coworkers. On April 6, 1987, Wright met with Craft and Main to determine why she was, in her belief, being treated badly. Craft maintained he did not socialize with Wright because he did not want to compromise the parties' respective positions before a hearing could be held on the complaint. Craft stated that otherwise he and the other associates in the office maintained a professional relationship with Wright. However, Wright argued the following actions in the workplace constituted harassment because of her race: her coworkers allegedly labeled her a racist; allegedly accused her of theft; ostracized her by not sharing popcorn with her; and embarrassed her by displaying her name on an in/out bulletin board when she was absent from work.

Wright believed the continuous stomach pains she experienced during this time were the result of the stress she was under at work. However, she had a history of ulcers and also had a lengthy history of alcoholism and personality disorders. She had been treated by numerous doctors for a variety of illnesses, including depression.

On June 7, 1988, Wright filed the present action alleging racial discrimination in employment in violation of Iowa Code section 601A.6 (1987) and 42 U.S.C. section 1981. On June 27, 1988, the City, Craft, and Main filed a combined motion to dismiss. The trial court granted the motion to dismiss as to the claims against the City. Wright subsequently filed a motion for default judgment, claiming the defendants had not filed an answer within ten days of the court's ruling. The defendants filed a resistance and also a counterclaim. The trial court denied the motion for default judg-

ment and also denied the defendants' counterclaim.

The defendants subsequently served Wright with a request for production of documents and interrogatories. During the next year, Wright produced documents showing she had been treated by numerous doctors for a wide variety of ailments, including psychiatric problems. In September 1989, the defendants served Wright with several subpoenas duces tecum. The information requested revealed that Wright had been treated at a local mental health clinic within the previous year and had also been treated at the Mayo Clinic in Rochester, Minnesota. The defendants filed a motion for sanctions on the grounds Wright had failed to produce the requested documents during discovery. The trial court granted the motion, striking out Wright's claims for alleged pain and emotional distress.

At trial, it was revealed that Wright had the greatest absenteeism of any employee at the utility. During 1985, Wright only worked 1,167.8 hours of the possible 2,080 work hours. In addition, she left work early or was late to work for a total of 363 minutes. The clerical worker with the next highest rate of late time only accumulated 30 minutes of late time. Craft and Main testified they initially decided not to raise Wright's salary by twenty cents due to her excessive rate of absenteeism. The defendants also introduced numerous letters of diagnoses from a variety of doctors who had examined Wright since 1979. In sum, the doctors' letters revealed they all believed Wright suffered from a histrionic personality disorder and viewed herself as having no faults while everyone else had many faults. The letters also revealed the doctors believed Wright would be hard to work with. However, Wright maintained all her absences had been authorized. She also complained other associates had been trained on new procedures and she had been left out. The defendants testified Wright was absent during all of the training sessions.

On September 21, 1990, the trial court entered its judgment dismissing the case in

its entirety. On September 28, 1990, Wright filed a rule 179(b) motion, which was overruled by the trial court. Wright appealed and the defendants cross-appealed. We affirm.

## ANALYSIS

### I. *Motion for Default Judgment.*

■ Wright argues the trial court abused its discretion in denying her motion for default judgment. The defendants responded to the original filing of the petition by timely filing a motion to dismiss. Wright argues the defendants did not file an answer to the petition until August 29, 1988, over ten days after the trial court denied their motion to dismiss on August 5, 1988. She maintains that pursuant to Iowa Rule of Civil Procedure 85(c), the defendants had to file an answer within ten days.

During the hearing on the motions, the trial court advised counsel for both parties the court was inclined to grant the motion to dismiss as to the City of Waterloo because the pleadings did not contain allegations that Wright was employed by the City or that any of the alleged acts of discrimination could be attributed to employees of the City. Upon representations by Wright's counsel that she may amend her Petition to include sufficient facts to retain the City in the litigation, the court further indicated it would allow Wright to amend her Petition to include such allegations and thus would make the dismissal subject to Wright's right to amend. The court's ruling contained the following language: "Accordingly, the Court grants the City of Waterloo's Motion to Dismiss, and said party is dismissed from this lawsuit on the pleadings as they now stand, *subject to Plaintiff's timely amendment.*" (emphasis added).

From the discussions at the hearing and the language in the court's ruling, counsel for the defendants believed Wright would immediately amend her pleadings. Therefore, rather than filing a separate answer, counsel chose to wait for Wright to amend the pleadings and would then file an answer on behalf of all the defendants. However, Wright's counsel filed a motion for default judgment rather than filing an amendment. After the motion for default judgment was filed, counsel for the defendants filed an answer and counterclaim.

Prior cases have not required a trial court, when refusing to grant a default, to find oversight, mistake, inadvertence, or other rule 236 conditions, to exist and cause defendant's failure to answer timely. *Johnson v. Gib's Western Kitchen Inc.*, 338 N.W.2d 872 (Iowa 1983). Nor does the law impose the burden of proof for setting aside a default judgment, Iowa R.Civ.P. 236, onto the defendant seeking to avoid a default judgment under rule 230. *Id.* As the supreme court stated in *Kohorst v. Iowa State Commerce Comm'n*, 348 N.W.2d 619, 622 (Iowa 1984):

> Despite the language of rules 230–32 that might be read to require the entry of a default under certain conditions, our cases interpreting those rules have not made such entry mandatory. We have consistently held that the question of allowing a default is largely within the discretion of the trial court. *Avery v. Peterson*, 243 N.W.2d 630, 631–32 (Iowa 1976) (no trial error in denying default: answer of county board of supervisors and auditor, filed after plaintiff's motion for default, was substantially the same as the timely answer filed by other defendants); *Severson v. Sueppel*, 260 Iowa 1169, 1177, 152 N.W.2d 281, 286 (1967). The policy of the law is to allow trial of actions on the merits. *Id.*

The specific circumstances clearly demonstrate the defendants at all times intended to defend this action. We are unable to conclude the trial court abused its discretion in denying Wright's motion for default judgment.

### II. *Harassment and Retaliation Claim.*

■ Wright argues the trial court erred in finding no harassment had taken place and the utility had not retaliated against her for filing a complaint.

Where the case was tried as a law action to the trial court, our scope of review is for correction of errors at law and the findings of facts are binding on us if supported by substantial evidence. *Theisen v. Miller,* 427 N.W.2d 874, 875 (Iowa App.1988); Iowa R.App.P. 4, 14(f)(1). We construe the trial court's findings broadly and liberally. *Grinnell Mut. Reins. Co. v. Voeltz,* 431 N.W.2d 783, 785 (Iowa 1988). In case of doubt or ambiguity we construe the findings to uphold, rather than defeat, the district court's judgment. *Id.* We are prohibited from weighing the evidence or the credibility of the witnesses. *Id.*

A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence. In evaluating sufficiency of the evidence, we view it in its light most favorable to sustaining the court's judgment. We need only consider evidence favorable to the judgment, whether or not it was contradicted.

*Briggs Transp. Co. v. Starr Sales Co.,* 262 N.W.2d 805, 808 (Iowa 1978).

"Evidence is substantial or sufficient when a reasonable mind could accept it as adequate to reach the same findings." *Waukon Auto Supply v. Farmers & Merchants Sav. Bank,* 440 N.W.2d 844, 846 (Iowa 1989) (citation omitted). Evidence is not insubstantial merely because it could support contrary inferences. *Grinnell Mut. Reins. Co.,* 431 N.W.2d at 785 (citation omitted).

Wright's claim of harassment rests on the conduct of Paul Haase, an employee of the utility. The trial court held Haase's actions could not be attributed to the Water Works without proof of an adopted discriminatory custom or policy. *See Jett v. Dallas Indep. School Dist.,* 798 F.2d 748 (5th Cir.1986); *East v. City of Chicago,* 719 F.Supp. 683 (N.D.Ill.1989); *Gonzalez v. Public Health Trust,* 686 F.Supp. 898 (S.D.Fla.1988); *Bouquett v. Clemmer,* 626 F.Supp. 46 (S.D.Ohio 1985). *See also Vaughn v. Ag Processing, Inc.,* 459 N.W.2d 627 (Iowa 1990). The court found the plaintiff complained to Craft, the general manager, twice about Haase and each

time Craft immediately talked to Haase's supervisor who then warned Haase about his conduct. The court ultimately found no harassment had occurred because there was no evidence of a hostile or abusive work environment and no evidence the utility failed to take prompt remedial actions concerning complaints of alleged harassment.

As our supreme court stated in *Vaughn:*

An employer cannot stand by and permit an employee to be harassed by his coworkers. *DeGrace v. Rumsfeld,* 614 F.2d 796, 803 (1st Cir.1980).

It may not always be within the employer's power to guarantee an environment free from bigotry. He cannot change the personal beliefs of his employees; he can let it be known, however, that racial harassment will not be tolerated, and he can take all reasonable measures to enforce this policy.... But once an employer has in good faith taken those measures which are both feasible and reasonable under the circumstances to combat the offensive conduct we do not think he can be charged with discriminating....

*Id.* at 805; *accord Snell v. Suffolk County,* 782 F.2d 1094, 1104 (2d Cir. 1986). This standard places a reasonable duty on an employer who is aware of discrimination in the workplace to take reasonable steps to remedy it. *Snell,* 782 F.2d at 1104. Whether the employer has taken such action is a question of fact. *Id.* Factors that the court should consider are the gravity of the harm, the nature of the work environment, and the resources available to the employer. *Id.* (citations omitted).

*Vaughn,* 459 N.W.2d at 634.

Whether the employer has taken reasonable steps to remedy discrimination in the workplace is a question of fact. The trial court found remedial actions had been taken. In this regard, we find substantial evidence to support the trial court's finding.

■ To establish a prima facie case of discriminatory retaliation in the form of harassment, the plaintiff must establish

the following elements: (1) the plaintiff filed a claim of discrimination; (2) the defendant took adverse action against the plaintiff; and (3) the adverse action was linked to plaintiff's filing a claim of discrimination. *See Martin v. Local 1513 & District 118 of the IAMAW*, 859 F.2d 581 (8th Cir.1988); *Benson v. Little Rock Hilton Inn*, 742 F.2d 414 (8th Cir.1984); *Sisco v. J.S. Alberici Constr. Co.*, 655 F.2d 146 (8th Cir.1981), *cert. denied*, 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982); *Setser v. Novack Inv. Co.*, 638 F.2d 1137 (8th Cir.1981); *Kellner v. General Refractories Co.*, 631 F.Supp. 939 (N.D.Ind.1986); *Weiss v. United States*, 595 F.Supp. 1050 (E.D.Va.1984).

■ The trial court held Wright failed to establish a successful retaliation claim. It found no intent on the part of the defendants to act in retaliation for Wright's filing of a complaint. It also emphasized Wright's extensive history of physical and emotional problems predating her employment at the utility.

The Plaintiff has been described by various doctors over the past ten years as depressed, thinking about suicide, a loner, having crying spells, kind of difficult, demanding, anxious, obsessively independent minded and angry. In 1988 Dr. Harding noted, *"It is clear her personality problems and her lack of awareness of her impact on others is creating many of the problems at work, though it is difficult for her to see her part in those problems."* The Plaintiff's presentation of herself suggested she had major personality problems which would be major contributors to any problems she might have at work. *Dr. Harding noted it would be difficult as a supervisor or a peer working with someone like Plaintiff.*

*Most of Plaintiff's complaints about coworkers are either normal happenings in an office that are blown out of proportion or were brought on by the Plaintiff's own actions.*

(emphasis added). The findings of the trial court are supported by substantial evidence in the record. Further, the record does not

support Wright's claim of a hostile or abusive work environment and fails to show the utility did not take prompt remedial actions concerning any of her complaints of alleged harassment. We affirm the trial court on this issue.

### III. *Racial Discrimination Claim.*

■ Wright argues the trial court erred in finding she failed to establish a successful claim of racial discrimination.

To establish a prima facie case of disparate treatment discrimination Wright was required to prove the following: (1) she was a protected class member; (2) she was adversely affected by the actions of the defendants or their agents and employees, by either being paid a lower wage or being subjected to harassing actions; and (3) similarly situated white employees were not subjected to the same treatment. *See Hy-Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n*, 453 N.W.2d 512 (Iowa 1990); *Woodbury County v. Iowa Civil Rights Comm'n*, 335 N.W.2d 161 (Iowa 1983); *Iowa Civil Rights Comm'n v. Woodbury County Community Action Agency*, 304 N.W.2d 443 (Iowa App.1981).

Once the prima facie case is established, a presumption arises as a matter of law that the defendant discriminated against the plaintiff. *Hy-Vee*, 453 N.W.2d at 516. The defendant must then go forward with the evidence to rebut the presumption of discrimination. *Id.* The defendant rebuts the presumption by articulating legitimate nondiscriminatory reasons for the decisions made about the plaintiff. *Id.* The plaintiff must persuade the court that a discriminatory reason more likely motivated the employer than the nondiscriminatory reason or otherwise that the employer's proffered explanation is unworthy of credence. *Id.* If the plaintiff is unsuccessful in carrying this burden, her claim must fail. *Trobaugh v. Hy-Vee Food Stores, Inc.*, 392 N.W.2d 154, 157 (Iowa 1986).

The record evidence established Wright proved a prima facie case of racial discrimination. She is black, a protected class member, and she was paid a lower wage than similarly situated white clerical work-

ers. However, the defendants provided evidence of a legitimate reason for paying Wright a lower wage. They asserted the twenty cent wage difference was due to Wright's excessive absenteeism and tardiness, not motivated for reasons of racial discrimination. The evidence clearly established Wright incurred numerous absences since first being employed by the utility, she was consistently late to work, and she repeatedly left work early.

We adopt as our own certain undisputed findings of the trial court.

In 1985 Water Works officials gave Ms. Wright a salary increase, which was $.20 less per hour than the increase given to a Ms. Payne [a white] and Ms. McTizic [a black]. The $.20 difference was alleged due to the absenteeism rate from Ms. Wright. Absenteeism did not affect any salary decisions prior to 1984.

\* \* \* \* \* \*

On January 1, 1987, Ms. Wright's salary was increased twenty cents more than Ms. McTizic and Ms. Payne's. This brought her salary back to a par with Ms. McTizic and Ms. Payne's salary. The decision to raise Ms. Wright's salary the additional $.20 preceded any complaint by Ms. Wright about her wages.

In January of 1987, Water Works officials published the 1986 income of its clerical employees in the *Waterloo Courier*, a newspaper, and Ms. Wright read the article and discovered she earned less than other clerical employees in 1986.

\* \* \* \* \* \*

In 1987 Ms. Wright was given a salary increase to $7.95 per hour ... and Ms. Payne and Ms. McTizic increases to $7.95 per hour. All salaries were established in December of 1986 prior to Ms. Wright making any complaints about her salary. Her first complaint was in February of 1987.

The trial court, in addition to the above, made extensive findings in reaching its conclusions. We find the trial court's findings are supported by substantial evidence. We affirm the trial court on this issue.

## IV. *Breach of Contract Claim.*

■ Wright argues the trial court erred in finding she failed to establish her breach of contract claim based on racial discrimination.

The trial court found Wright was an employee at will. It further found the terms of the employment contract between Wright and the utility were governed by the collective bargaining agreement which existed between the utility and the Teamsters Union, Local No. 844. The contract stated the Water Works would not discriminate against Wright on the basis of her race. However, as previously addressed, the trial court found no evidence of racial discrimination. Therefore, because there was no evidence of racial discrimination, the trial court held Wright had not established a breach of contract. We affirm the trial court on this issue.

## V. *Motion for Sanctions.*

■ Wright argues the trial court abused its discretion in granting defendants' motion for sanctions against her. She claims the defendants already possessed numerous documents indicating she had mental health problems and could not have been prejudiced by any alleged failure to submit to discovery.

On this issue, we review for an abuse of discretion. *State v. Halstead,* 362 N.W.2d 504, 506 (Iowa 1985). In order to show an abuse of discretion, one generally must show that the court exercised its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Blackwell,* 238 N.W.2d 131, 138 (Iowa 1976) (quoting *Weeks v. Burnor,* 132 Vt. 603, 326 A.2d 138, 140 (1974)).

During discovery, the defendants asked Wright to list the names of her treating physicians. Wright provided five names but failed to disclose fifteen other names, one of whom was her then treating physician who she was seeing at the time the disclosure was requested. As a result of Wright's failure to make timely discovery, the defendants did not have available the opinions of her physicians concerning causation and were not otherwise allowed to

develop their defense concerning the claims of distress or emotional pain and suffering. The trial court imposed sanctions because of obvious potential prejudice to the defendants caused by Wright's failure to make discovery. We are unable to conclude the trial court abused its discretion in granting the defendants' motion for sanctions insofar as it relates to paragraph 2 of its order which provides for the payment by plaintiff of costs in securing subpoena and reasonable attorney fees. We affirm the trial court on this issue.

As an additional sanction, the court struck the plaintiffs' claim for "alleged pain, stress or emotional distress." The plaintiff asserts on appeal that the court abused its discretionary power when it struck this claim for it goes to the heart of her claim for damages. We need not address the question of whether the sanction under the circumstances here is too severe for the trial court under its finding of fact and judgment entry determined that the defendants were free of any liability. Since we find the trial court's findings of fact are supported by substantial evidence, they are binding on us and have the effect of a special verdict. *Theisen v. Miller*, 427 N.W.2d 874 (Iowa App.1988). Without liability, the issue of damages need not, under the circumstances here, be considered.

## VI. *Evidentiary Rulings.*

Wright argues the trial court erred in admitting exhibit X, a copy of her employment application, into evidence because the evidence was irrelevant and prejudicial.

Exhibit X was not offered as substantive evidence. Rather, it was offered and the trial court admitted the document into evidence solely for impeachment purposes. Specifically, with respect to the issue of lack of training or promotion, Wright, when hired, had represented she was a high school graduate with roughly a "C" average. In fact, she only had a tenth grade education and her grades show below a "C" average with extremely low ability in the field of mathematics and marginal skills at typing. We are unable to conclude the trial court erred in admitting exhibit X for impeachment purposes. We affirm the trial court on this issue.

## VII. *Rule 179(b) Motion.*

Wright argues the trial court erred in denying her rule 179(b) motion and in failing to rule on the credibility of the witnesses Craft and Main.

Wright maintains Craft and Main were principal witnesses and there were numerous contradictions in their testimony. We find that even if Wright's interpretation of the record were accepted, it is inconsequential. The trial court resolved the evidence into its findings of facts which are supported by substantial evidence and have the effect of a special verdict. We affirm the trial court's denial of Wright's rule 179(b) motion.

## VIII. *Application to Amend to Include a Counterclaim.*

The defendants cross-appeal and argue the trial court erred in failing to rule on their application to amend to include a counterclaim.

On September 20, 1988, the defendants filed an application to file a counterclaim, noting the court had without explanation struck defendants' counterclaim. In the absence of a ruling on its application to amend, the defendants filed an application for ruling on September 25, 1989. On September 26, 1989, the trial court entered an order denying the defendants' application for ruling. We find the defendants waived this issue by not raising it previously. We affirm the trial court on this issue.

## CONCLUSION

After considering all issues presented, we affirm the trial court.

Costs of this appeal shall be divided equally between the parties.

AFFIRMED.